SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Northwest Bergen County Utilities Authority v. Kathleen A. Donovan** (A-36/37-14) (075060)

**Argued April 11, 2016 -- Decided August 15, 2016**

**LaVECCHIA, J., writing for a majority of the Court.**

In this appeal, the Court addresses the authority of the County Executive of Bergen County to take certain actions affecting the Northwest Bergen County Utilities Authority (the Authority). Specifically, the Court is asked to resolve (1) whether the County Executive had the authority to order the removal of certain commissioners; and (2) whether by use of her veto power the County Executive could eliminate the Authority's provision of (a) a $5000 stipend paid to commissioners, and (b) health benefits for the commissioners.

In 1985, the people of Bergen County adopted the "county executive plan" prescribed in N.J.S.A. 40:41A-31 to -44 of the Optional County Charter Law (Charter Law). Under the plan, the "governing body" includes the board of freeholders and the county executive, although the plan recognizes a separation of powers between the two.

Within Bergen County, the Authority operates to provide sewage treatment services in accordance with the Municipal and County Utilities Authorities Law (MCUAL), N.J.S.A. 40:14B-1 to -78. Consistent with MCUAL requirements, the freeholders passed a resolution in 1979, which authorized the reorganization of the Authority under its present name, established staggered terms for reappointed members of the previous sewer authority, and established a $5000 annual stipend for the first-appointed commissioners of the new reorganized Authority. The term of the last of the commissioners appointed through the reorganizing resolution expired in 1984. Succeeding commissioners have been paid an annual stipend of $5000 through monies incorporated in annual budget submissions. There have not been any amendatory resolutions passed with respect to commissioner compensation since the 1979 resolution. In or around 2004, the Authority began providing health benefits to commissioners by including such benefits in annual budget submissions. The freeholders never passed a resolution or took other legislative action to authorize those benefits for the commissioners.

The acts giving rise to this appeal commenced on November 1, 2011, when the Authority passed a resolution approving its preliminary budget for 2012. The Authority forwarded the proposed budget to the County Executive, Kathleen Donovan, who vetoed the portion of the meeting minutes that approved a budget containing both a $5000 stipend and health care benefits for the Authority commissioners.

The Authority sought review of the County Executive's veto before the Director of the Division of Local Government Services within the Department of Community Affairs (DCA), who determined that the veto was valid and binding. In response, the Authority held an emergency meeting on March 22, 2012, and voted to appeal the Director's decision to the Local Finance Board within the DCA. The County Executive vetoed the minutes of the emergency meeting that authorized the appeal, contending that the Authority had violated requirements of the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21. The Authority held another meeting on March 28, 2012, to address the OPMA concerns. The Authority again passed a resolution authorizing an appeal to the Local Finance Board, and the County Executive subsequently vetoed the portion of the minutes that authorized the appeal. The County Executive also vetoed the portion of the minutes that approved use of Authority funds to finance the appeal. After the Authority refused to amend its 2012 budget to remove the provision that funded a $5000 stipend and health care benefits for the commissioners, the County Executive summarily dismissed seven of the nine commissioners.

The Authority filed a complaint in lieu of prerogative writs, alleging that the County Executive lacked the authority to terminate the commissioners, to veto any of the meeting minutes that authorized the stipend and benefits for the commissioners, or to veto the meeting minutes that authorized funding for an appeal. The trial court reinstated the commissioners, finding that the County Executive could not terminate them without first finding that they had committed misconduct or neglected their duties. In respect of the veto issues, the court concluded that the veto of the meeting minutes that authorized the stipend and benefits was invalid, and that the acts of vetoing the Authority's administrative appeals and their funding were ultra vires.

1

Defendants appealed, and the Appellate Division affirmed in part and reversed in part. Most critically for this appeal, the panel affirmed the trial court's judgment on the termination issue, but reversed the judgment in other respects, holding that the County Executive could veto the portion of the Authority's meeting minutes that submitted a 2012 Authority budget that included provision for the commissioners' stipend and health care benefits.

The Court granted the Authority's petition as well as defendants' cross-petition. 220 N.J. 573 (2015).

**HELD**: The County Executive's termination of the Authority commissioners was not conducted in accordance with her authority, and her unilateral action was contrary to and in violation of N.J.S.A. 40:14B-16. Likewise, the County Executive's use of the veto power to diminish the compensation (the $5000 stipend) being paid to the commissioners since 1979 violated N.J.S.A. 40:14B-17 and must be declared void. However, in respect of the health benefits provided to the commissioners in more recent years, the County Executive's supervisory authority to review and reject Authority action through her veto power is broad and easily encompasses authority to disapprove such administrative action.

1. The dispute in this matter involves the proper interpretation of two statutory schemes -- the Charter Law and the MCUAL. When interpreting multiple statutes touching upon the same subject, the goal is to seek and give effect to the Legislature's intent and to attempt to harmonize the provisions of all statutes that the Legislature has enacted affecting the subjects involved. Here, the statutes can be reconciled and applied in a harmonious manner that fulfills the legislative intent underlying each. (pp. 14-16).

2. The Court first considers the extensive authority of the County Executive over the administration of county government and the tools at her disposal to carry out that responsibility. In addition to appointment power, the county executive has general, but not unilateral, removal and suspension powers. The county executive has other powers, such as veto power, which can be exercised in respect of the minutes of a county authority. On the other hand, the MCUAL speaks directly to the commissioners' right to hold office and protections during their terms. With that statutory background, the Court reviews the removal of the seven commissioners. (pp. 16-19).

3. Review of the County Executive's authority under the Charter Law and the MCUAL does not reveal a conflict between the two statutory schemes. N.J.S.A. 40:14B-16 establishes that the commissioners hold their office for the length of their term. However, the MCUAL recognizes limited, for-cause circumstances for which a member of a utilities authority may be removed from office, subject to notice and hearing processes. That protection guaranteed under the MCUAL does not conflict with the scheme for removal of persons under the Charter Law. Pursuant to the Charter Law, the County Executive is the appointing authority for the members of the utilities authority, but her power to remove is not unilateral. This appeal concerns office holders, protected from removal except for certain cause bases, and entitled to serve out their terms and to continue in office until their successor is appointed. More importantly, the County Executive did not follow the procedure that the Charter Law requires. In sum, the County Executive's termination of the commissioners was not conducted in accordance with her authority under N.J.S.A. 40:41A-37(c), and her unilateral action was contrary to and in violation of N.J.S.A. 40:14B-16. (pp. 20-24).

4. The Court notes a final reason for finding no conflict between the Charter Law and the MCUAL with respect to removal of commissioners. The Charter Law specifically gave counties operating under the optional forms of government the ability to reorganize, alter, or abolish county agencies, but carved out an exception for governmental entities established under the MCUAL, N.J.S.A. 40:41A-30. That statutory section and the Sponsor's Statement to the 1997 amendment support the Court's conclusion. (pp. 24-25).

5. Having determined that commissioners have protected rights under the MCUAL that must be respected if harmonization is possible between that Act and the Charter Law, the Court turns to the County Executive's veto of the Authority's minutes approving the $5000 stipend paid to commissioners. Although the county executive has broad authority to exercise veto power over minutes on a wide range of topics, that power must be harmonized with more specific protective legislation, such as N.J.S.A. 40:14B-17, which provides commissioners absolute protection from reduction in compensation during the term of their office. The language of the 1979 resolution, establishing a $5000 annual stipend for the first-appointed named commissioners of the new reorganized Authority, is ambiguous, and the County Executive argues that the language merely authorized $5000 stipends for the named persons in the resolution. Yet, for decades, the $5000 stipend has been treated as the compensation that came with appointment to the position of commissioner. The Court is loath to interpret the 1979 resolution as not having set an annual compensation that would be paid to commissioners upon appointment to a term on the Authority. (pp. 26-29).

6.  With respect to health benefits, the County Executive's determination to veto that portion of the minutes, and thereby to prevent the provision of health benefits to the commissioners, was well within her prerogative.  The freeholders never authorized by resolution the provision of health benefits to Authority commissioners as part of any compensation permitted under N.J.S.A. 40:14B-17.  To the extent that the commissioners authorized those benefits for themselves and included provision for those benefits within the budgetary line that encompassed benefits for Authority employees, that action was subject to review by the County Executive.  Her authority to reject Authority action through her veto power under N.J.S.A. 40:41A-37(h) is broad and easily encompasses authority to disapprove such action affecting the cost of services.  (pp. 29-30).

The judgment of the Appellate Division is **AFFIRMED IN PART and REVERSED IN PART**.

**JUSTICE SOLOMON, CONCURRING IN PART and DISSENTING IN PART,** joins the majority's holding that the County Executive had the authority to veto the provision of health benefits to the commissioners, but dissents from the majority's conclusions that the County Executive did not have the authority under the Charter Law to veto compensation for commissioners and to remove them from office.  Justice Solomon expresses the view that, to the extent there are the differences between the MCUAL and the Charter Law regarding the scope of the County Executive's veto and removal power, the MCUAL, as a general law, must yield to the provisions of the Charter Law, which confer on the County Executive broad powers to veto any action taken by the Authority and grant exclusive and discretionary power to remove commissioners of the Authority.

**JUSTICE PATTERSON, CONCURRING IN PART and DISSENTING IN PART,** joins the majority's holdings that the County Executive lacked the authority to remove the commissioners, and had the authority to reject by veto the commissioners' authorization of health benefits for themselves.  Justice Patterson disagrees with the majority's holding that the County Executive lacked authority to veto the minutes providing for the $5000 stipend to commissioners, and joins Justice Solomon's separate opinion with respect to that issue.

**CHIEF JUSTICE RABNER, JUSTICES ALBIN and FERNANDEZ-VINA, and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.  JUSTICE PATTERSON and JUSTICE SOLOMON each filed separate opinions, concurring in part and dissenting in part.**

3

NORTHWEST BERGEN COUNTY
UTILITIES AUTHORITY,

    Plaintiff-Appellant
    and Cross-Respondent,

        v.

KATHLEEN A. DONOVAN, COUNTY
EXECUTIVE OF THE COUNTY OF
BERGEN, and COUNTY OF BERGEN,

    Defendants-Respondents
    and Cross-Appellants,

        and

BERGEN COUNTY BOARD OF CHOSEN
FREEHOLDERS,

    Defendant.

        Argued April 11, 2016 – Decided August 15, 2016

        On certification to the Superior Court,
        Appellate Division.

        Jeffrey A. Zenn argued the cause for
        appellant and cross-respondent (Sokol, Behot
        & Fiorenzo, attorneys; Leon J. Sokol, of
        counsel; Mr. Zenn, Mr. Sokol, and Steven N.
        Siegel, on the briefs).

        Frank P. Kapusinski argued the cause for
        respondents and cross-appellants (Julien X.
        Neals, County Counsel, attorney).

        JUSTICE LaVECCHIA delivered the opinion of the Court.

We are called on to review the authority of the County Executive of Bergen County to have taken certain employment and other actions affecting the Northwest Bergen County Utilities Authority (the Authority). The Authority initiated this action by way of a complaint in lieu of prerogative writs that challenged (1) the County Executive's unilateral and immediate termination of seven Authority commissioners; (2) the County Executive's veto of portions of the Authority's budget related to the commissioners' salary and health benefits; and (3) the County Executive's vetoes of Authority action authorizing the taking of an administrative appeal within the Department of Community Affairs. We now affirm in part and reverse in part the Appellate Division judgment that parsed the County Executive's ability to have taken those actions.

## I.

This appeal requires us to address the intersection of statutes governing the Authority and the form of government plan adopted in Bergen County. Before detailing the actions and counteractions taken by the parties, we set forth some preliminary information about the statutory schemes pertaining to each entity and some general background on the entities.

## A.

Under the Optional County Charter Law (OCCL or Charter Law) enacted in 1972, see L. 1972, c. 154 (codified originally as

2

N.J.S.A. 40:41A-1 to -144), the people of the counties of New Jersey have the opportunity to select one of the optional forms of government that the law sets forth. Although four plans are authorized, we are concerned here with the county executive form of government.

In 1985, pursuant to the procedures required under law, the people of Bergen County adopted the "county executive plan" prescribed in N.J.S.A. 40:41A-31 to -44 of the Charter Law. That plan of government is subject also to the general provisions set forth in Article 7 of the Charter Law and made applicable to all optional plans under that law. See N.J.S.A. 40:41A-86 to -144 (Article 7).

Under the county executive plan, the term "governing body" of the county is directed to be construed as including both the board of freeholders and the county executive, N.J.S.A. 40:41A-32(b), although the plan recognizes a separation of powers between the two, ibid. Executive powers are conferred on the county executive. See N.J.S.A. 40:41A-36 to -37. Legislative and investigative powers are vested in the board of freeholders. See N.J.S.A. 40:41A-38, -41; see also N.J.S.A. 40:41A-86 (stating general intent to invest boards of freeholders with "such investigative powers as are germane to the exercise of its legislative powers, but to retain in the head of the executive

3

branch full control over the county administration and over the administration of county services").

The county executive is responsible for the supervision, direction, and control of the administrative departments of the county. N.J.S.A. 40:41A-37(a). Consistent with that authority, the county executive has the authority to appoint the heads of county departments and their divisions. N.J.S.A. 40:41A-37(b). The county executive also has appointment power over "the members of all county boards, commissions and authorities," subject to the advice and consent of the board of freeholders. Ibid.; see also N.J.S.A. 40:41A-41(a) (granting board power of advice and consent over all appointments for which board confirmation is specified).

B.

Within Bergen County, the Authority operates to provide sewage treatment services in accordance with the Municipal and County Utilities Authorities Law (MCUAL), N.J.S.A. 40:14B-1 to -78. The Authority previously was known as Northwest Bergen County Sewer Authority until it was reorganized under its present name in 1979, pursuant to N.J.S.A. 40:14B-6 and -7.

The reorganization took place before Bergen County adopted the county executive plan of government and therefore the 1979 reorganization occurred through freeholder action. Consistent with MCUAL requirements, the county freeholders passed a 1979

4

resolution, accomplishing multiple purposes under the MCUAL. The resolution authorized the reorganization, see N.J.S.A. 40:14B-4(a), established the required staggered terms for reappointed members of the previous sewer authority, now newly appointed named members of the seven-member utilities authority, see N.J.S.A. 40:14B-4(a), (b)(1), and -6(b), and established a $5000 annual stipend for the first-appointed named commissioners of the new reorganized Authority, see N.J.S.A. 40:14B-17 (authorizing resolution, which creates reorganized sewerage authority, to provide members with compensation for services within annual or other limitations to be stated in such resolution). The resolution did all that in relatively brief language that stated, after authorizing the reorganization: "the following persons [shall] be appointed as members of the Bergen County Northwest Utilities Authority at an annual salary of $5,000.00 effective immediately[.]" The resolution then listed the reappointed members, by name, with specific term limits fitting the statutory requirements for staggered terms of varying length.

The MCUAL renders each commissioner an office holder, entitled to retain office for a specific term and until a successor is qualified. See N.J.S.A. 40:14B-16. The MCUAL also provides that a commissioner's compensation may not be reduced during a member's term of office except with consent. See

5

N.J.S.A. 40:14B-17.  The dispute in this matter concerns the meaning of those promises under the circumstances that occurred in Bergen County.

The term of the last of the commissioners appointed through the original reorganizing resolution expired in 1984. Succeeding commissioners appointed to the Authority, including the ones affected by the County Executive's actions challenged in this matter, apparently have been paid an annual stipend of $5000 through monies incorporated in annual budget submissions. Based on the record presented in this appeal, there have not been any amendatory resolutions passed by the board of freeholders since its 1979 resolution with respect to commissioner compensation, at least not until the events that are challenged in this matter began to unfold.

In or around 2004, the Authority also began providing health benefits, under the State Health Benefits Program, to its commissioners by including provision for same in annual budget submissions.  The record reveals that the Bergen County Board of Freeholders never passed a resolution or took other legislative action to specifically authorize those benefits for the commissioners.  As best as the record on appeal reveals, the commissioners' health benefits were not separately identified in budget lines from expenses for the health benefits of the Authority's employees.

6

Finally, we note that, until this dispute, no veto action previously was taken in respect of Authority minutes that reflected the commissioners' actions approving proposed budgets containing expenditures for the stipends or providing for the commissioners' health benefits.

## II.

The series of actions that provide the grist for this appeal commenced with an Authority meeting conducted on November 1, 2011, when the Authority passed a resolution approving its preliminary budget for 2012.  The Authority forwarded the proposed budget to the County Executive.  Kathleen Donovan, the County Executive during the contested actions involved in this matter, vetoed the portion of the minutes of the Authority's meeting that approved a budget containing both a $5000 stipend and health care benefits for the individual Authority commissioners.

The Authority sought review of the County Executive's veto before the Director of the Division of Local Government Services within the Department of Community Affairs (DCA), who determined that the veto was valid and binding.  In response, the Authority held an emergency meeting on March 22, 2012, and voted to appeal the Director's decision to the Local Finance Board within the DCA.  The County Executive next vetoed the minutes of the emergency meeting that authorized the appeal, contending that

7

the Authority had violated requirements of the Open Public

Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21.

Although the Authority maintained that its meeting was not

flawed by any OPMA violations, it held another meeting on March

28, 2012, to address the County Executive's OPMA concerns.  The

Authority again passed a resolution authorizing an appeal to the

Local Finance Board.  The County Executive subsequently vetoed

the portion of the minutes of that meeting that authorized the

appeal.  The County Executive also vetoed the portion of the

minutes that approved use of Authority funds to finance the

appeal.

After the Authority refused to amend its 2012 budget to

remove the budgetary provision that funded a $5000 stipend and

health care benefits for the commissioners, the County Executive

summarily dismissed seven of the nine commissioners.[1]

The Authority filed a complaint in lieu of prerogative

writs, alleging that the County Executive lacked the authority

to terminate the commissioners, to veto any of the meeting

minutes that authorized the stipend and benefits for the

commissioners, or to veto the meeting minutes that authorized

---

[1] Bergen County records show that, after the Authority was reorganized, its seven-person membership increased to nine members in 1981 and thereafter fluctuated but generally stayed at a nine-member level, including at the time of the actions in this matter.

funding for an appeal, as well as the appeal itself, to the Local Finance Board. Defendants in this matter are Kathleen Donovan (the County Executive), Bergen County, and the Bergen County Board of Chosen Freeholders (collectively, defendants, except where noted).

As a result of motions and cross-motions filed, the trial court reinstated the commissioners, finding that the County Executive could not terminate them without first finding that the commissioners had committed misconduct or neglected their duties. In respect of the veto issues, the court found that compensation cannot be reduced while the commissioners are in office; therefore, the court concluded that the veto of the meeting minutes that authorized the stipend and benefits was invalid. Moreover, the court determined that the County Executive's acts of vetoing the Authority's administrative appeals and their funding were ultra vires. Finally, the court also noted that, if there was a conflict between the Charter Law and the MCUAL (applied as a general law in Bergen County under N.J.S.A. 40:41A-25), the MCUAL governs.[2]

---

[2] While the matter was pending before the trial court, the Local Finance Board reversed the Director of the Division of Local Government Services, finding that they did not have jurisdiction over the matter once the prerogative writs complaint was filed. That ruling was not appealed. Therefore, we do not address it.

Defendants appealed.  On August 1, 2012, while the appeal was pending and in light of the trial court's finding that the incumbent commissioners were entitled to receive an annual stipend and health care benefits, the Bergen County Board of Freeholders passed a resolution terminating all stipends and benefits for commissioners appointed after April 18, 2012.  That resolution is not challenged in the present action.

The Appellate Division affirmed in part and reversed in part.

First, the panel held that the County Executive "exceeded the bounds of the authority conferred upon her by statute when she terminated the commissioners" and thereby affirmed the trial court's judgment on the termination issue.  Noting that N.J.S.A. 40:41A-37(c) allows a County Executive "to remove an official in the unclassified service of the county -- and there is no dispute that the authority's commissioners are in the unclassified service," the panel reasoned that the County Executive must have unilateral appointment power over the commissioners in order to exercise unilateral removal power.  Because the County Executive did not have the power to appoint the Authority's commissioners without the advice and consent of the board of freeholders, the panel determined that she did not have the power to remove the commissioners without the Board's involvement.  And, equally important, the panel pointed to

N.J.S.A. 40:14B-16 as setting forth the bases for which a commissioner could be removed. Pursuant to that statute, a commissioner must be provided with a copy of the charges and must be provided an opportunity to be heard by the governing body, ibid., which, under the county executive form of government, the panel explained citing N.J.S.A. 40:41A-32(b), is comprised of the county executive and the board of freeholders. The County Executive's actions were determined to be ultra vires for failing to follow that process.

Second, the panel held that the County Executive could veto the portion of the Authority's meeting minutes that submitted a 2012 Authority budget that included provision for the commissioners' stipend and health care benefits, thus reversing the trial court's judgment on those issues. According to the panel, the Legislature gave the County Executive, through N.J.S.A. 40:41A-37(h), the power to veto any action taken by a county utilities authority and placed no limit on the matters that could be vetoed. In response to the Authority's argument that the 1979 freeholder resolution authorized an annual stipend of $5000 that would be awarded to succeeding commissioners indefinitely, the panel read the resolution as "authoriz[ing] the annual stipend of $5,000 to only those commissioners identified in the resolution, none of whom [were] still in office." The panel also noted that the freeholders never passed

11

a resolution authorizing health care benefits for the commissioners, as would be required by N.J.S.A. 40:14B-17 according to the panel.

In addressing the compensation and health benefits issue, the panel also relied on N.J.S.A. 40:41A-26. The panel reasoned that Charter Law counties like Bergen County are governed by the Charter Law's provisions, see N.J.S.A. 40:41A-25, and also are subject to "general law," see ibid., as that term is defined under N.J.S.A. 40:41A-26. The panel determined that general law such as the MCUAL applies when such law is not inconsistent with the Charter Law, and here the panel declared the Charter Law provisions paramount and controlling over MCUAL general law provisions regarding reduction of the commissioners' compensation through the County Executive's exercise of her veto power.

Finally, we note, for completeness, that the appellate panel stated that the Authority had a constitutional right to appeal the County Executive's veto of Authority minutes to both the Director and the Local Finance Board within DCA and, consequently, to expend funds to finance an appeal. However, the panel identified that issue on appeal to be moot because the panel concluded that the County Executive could veto other portions of the Authority's minutes that dealt with the payment of the commissioners' annual stipends and benefits. The issue

12

of the appropriateness of using veto authority in such manner -- to block the Authority's right to appeal vetoed action within DCA administrative channels -- is not before us as the parties are not pursuing the issue before this Court.

The Authority filed a petition for certification with this Court and defendants filed a cross-petition. The Authority also filed an emergent motion for stay of relief pursuant to Rule 2:9-8. A temporary stay of the termination of the commissioners' health care benefits was put in place on October 24, 2014. The full Court thereafter denied the Authority's motion for a stay on November 18, 2014.

We granted the Authority's petition as well as defendants' cross-petition. 220 N.J. 573 (2015).

### III.

In the petition and cross-petition for certification filed in this matter, the parties raise essentially the same issues but from different perspectives. Common to each, we are asked to resolve (1) whether the County Executive had the authority to order the removal of the commissioners and whether the manner of their removal comported with law; and (2) whether by use of her veto power the County Executive could eliminate the Authority's provision of (a) the $5000 stipend paid to commissioners since 1979, and (b) the health benefits provided to the commissioners in more recent years. The parties present differing arguments

13

in approaching those issues but, at bottom, those are the issues to be resolved. Their arguments track those presented and addressed by the trial court and Appellate Division, as discussed above.

IV.

A.

The dispute in this matter is one involving the proper interpretation of two statutory schemes that contain provisions touching on the controversies that erupted in Bergen County. The goal in cases of statutory construction is simple. It is the court's duty to seek and give effect to the Legislature's intent. See Brooks v. Odom, 150 N.J. 395, 401 (1997).

When interpreting multiple statutes touching upon the same subject, the goal is the same but with this added component: We must attempt to harmonize the provisions of all statutes that the Legislature has enacted affecting the subjects involved. Town of Kearny v. Brandt, 214 N.J. 76, 98 (2013) (citing Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15 (2005)). Indeed, this Court has recognized that

> [t]he Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose. And the courts have the duty of reconciling them so as to give effect to both expressions of the lawmakers' will.

14

[State v. Federanko, 26 N.J. 119, 129-30 (1958) (emphasis added) (citations omitted).]

To that end, "[s]tatutes that deal with the same matter or subject should be read in pari materia and construed together as a 'unitary and harmonious whole.'" Saint Peter's Univ. Hosp., supra, 185 N.J. at 14-15 (quotation marks and citation omitted). That is our paramount concern in the present matter for we presume that the Legislature intended for its two statutory schemes -- the Charter Law and the MCUAL -- to generally work harmoniously, not in conflict with one another.

Intertwined in the parties' arguments are countering positions over how to interpret N.J.S.A. 40:41A-26. Because Bergen County has a county executive form of government, under N.J.S.A. 40:41A-25, it is "governed by the plan adopted, by the provisions of this law applicable to all optional plans, and by all general laws." The Charter Law defines "general law" as one that:

> a. Is not inconsistent with this act; and
>
> b. Is by its terms applicable to or available to all counties, or;
>
> c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare.

15

[N.J.S.A. 40:41A-26.]

Indeed, panels of the Appellate Division have wrestled with how subsection (a) applies with (b) and (c). See In re Salaries for Prob. Officers of Hudson Cty., 158 N.J. Super. 363, 367 (App. Div.), certif. denied, 78 N.J. 339 (1978); Amato v. Bd. of Chosen Freeholders of the Cty. of Essex, 240 N.J. Super. 313, 316-17 (App. Div. 1990). This case does not require us to resolve that open question because we fail to see direct inconsistency between the MCUAL and the Charter Law on the issues before us. Rather, we find that the statutes can, and should, be reconciled and applied in a harmonious manner that fulfills the legislative intent underlying each.

B.

We consider first the extensive authority of the County Executive over the administration of county government and the tools placed at her disposal to carry out that responsibility.

Generally described, the county executive is vested with the authority to "supervise, direct and control all county administrative departments." N.J.S.A. 40:41A-37(a). As previously noted, as part of specifically enumerated powers, the county executive is authorized to appoint the heads of county departments and divisions and, among others, "the members of all county boards, commissions and authorities," subject to the advice and consent of the board of freeholders. N.J.S.A.

16

40:41A-37(b); see N.J.S.A. 40:41A-41(a) (conferring advice and consent authority on board).

Also, pursuant to N.J.S.A. 40:41A-37(c), the county executive has general removal and suspension power over individuals in the unclassified service, "over whose office the county executive has power of appointment," subject to the provisions of N.J.S.A. 40:41A-87(b); see also N.J.S.A. 40:41A-37(d) (authorizing county executive to retain or delegate appointment and removal power over departmental employees, subject to civil service or administrative code requirements specifying otherwise).

The removal power is not unilateral. Under N.J.S.A. 40:41A-87(b), a provision generally applicable to all optional forms of county government, the board of freeholders has authority, after notice and upon action within a limited period of time, to short-circuit the proposed removal, or suspension for a definite term, of an employee by passing, by two-thirds vote, a resolution of disapproval, which voids the termination or suspension prior to a public hearing. Otherwise, the employee receives a public hearing, at the conclusion of which the board retains the ability to veto the county executive's disciplinary action. Ibid. A notable exception is provided for the county administrator, who serves at the exclusive discretion of the county executive. See N.J.S.A. 40:41A-42 (granting board

17

advice and consent over county administrator but withholding from board ability to prevent administrator's suspension or dismissal by passage of resolution of disapproval); cf. N.J.S.A. 40:41A-41(d) (providing similarly that counsel to board serves at board's pleasure).  Thus, where the Legislature intended to confer on the county executive unilateral removal authority, it knew how to do so.

In addition to appointment power over members of county boards, commissions, and authorities, among other high-ranking county officials, and the described removal powers, the county executive also has other powers in connection with county functions that are pertinent in this appeal.  The county executive is granted veto power, which can be used in respect of ordinances passed by the board of freeholders, N.J.S.A. 40:41A-37(g); cf. N.J.S.A. 40:41A-38(p) (allowing veto in limited setting to board resolutions of consent to municipal ordinances or resolutions regulating traffic or parking on county roads), and such veto power can be exercised in respect of all or a part of the minutes of a county authority, N.J.S.A. 40:41A-37(h). Regarding the latter, the county executive's veto of a county authority's minutes may be overridden by majority vote of the full membership of the board of freeholders within ten days of receipt of the veto action.  Ibid.

18

On the other hand, the MCUAL speaks directly to the Authority's commissioners' right to hold office and protections during their term of office -- protections to which the commissioners are entitled before removal or reduction in compensation may occur.

Specifically, N.J.S.A. 40:14B-16 provides that

> [e]ach member of a municipal authority shall hold office for the term for which he was appointed and until his successor has been appointed and has qualified. A member of a municipal authority may be removed only by the governing body by which he was appointed and only for inefficiency or neglect of duty or misconduct in office and after he shall have been given a copy of the charges against him and, not sooner than 10 days thereafter, had opportunity in person or by counsel to be heard thereon by such governing body.

The MCUAL also authorizes, as noted, the provision of compensation to commissioners, subject to any limitations established in the original resolution reorganizing a county sewerage authority as a municipal authority or as subsequently amended by like resolution, and provides that compensation may not be reduced during a member's term of office except with consent. See N.J.S.A. 40:14B-17.

With that statutory background, we turn to the interpretative task at hand, beginning with review of the County Executive's action ordering the removal of the seven commissioners.

19

V.

Our examination of the County Executive's authority under the Charter Law and the MCUAL provisions addressing utilities authority commissioners' terms of office and the manner of removal of such office-holding commissioners does not reveal a conflict between the two statutory schemes. There certainly is not an irreconcilable conflict that prevents this Court from fulfilling its duty to seek to harmonize these two statutory schemes. See Saint Peter's Univ. Hosp., supra, 185 N.J. at 14-15.

N.J.S.A. 40:14B-16 establishes that the commissioners hold their office for the length of their term. However, the MCUAL recognizes limited, for-cause circumstances for which a member of a utilities authority may be ousted from office. The Legislature clearly recognized circumstances calling for removal of a commissioner short of the completion of one's term and the appointment of a successor, and it established a safety valve by providing a mechanism to accomplish that eventuality. A utilities authority commissioner "may be removed . . . by the governing body by which he was appointed . . . for inefficiency or neglect of duty or misconduct in office." Ibid. Importantly, the MCUAL sets out notice and hearing processes to be followed to accomplish such a removal, providing expressly that a commissioner may be removed only after he has been "given

20

a copy of the charges against him" and after he has been given an opportunity to respond. Ibid. That statutory language recognizes a protected right conferred on the appointed office holder to retain the office for a specific term, see ibid. (creating right to hold office), and it is consonant with well-established law governing due process rights attaching to such property interests, cf. Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 150-51 (1978); see also Siss v. Cty. of Passaic, 75 F. Supp. 2d 325, 341 (D.N.J. 1999) ("Under New Jersey law, public employees may be discharged with or without cause, unless their positions are otherwise protected, for example, by . . . a fixed term."), aff'd, 234 F.3d 1265 (3d Cir. 2000).

That protection guaranteed to commissioners under the MCUAL does not conflict with the scheme for removal of persons under the Charter Law. The Charter Law speaks clearly on the power of appointment to county authorities under the county executive plan of government: "With the advice and consent of the board, [the Executive] shall appoint . . . the members of all county boards, commissions and authorities." N.J.S.A. 40:41A-37(b). By that language, the County Executive is the appointing authority for the members of the utilities authority, but her

power to remove is not unilateral.[3]  The analysis must return to the statutorily designated roles for both the county executive and the board under the county executive plan set forth in the Charter Law.

When it comes to removal of _even_ "unclassified persons"[4] in county service, there is a legislative role to be played by the board in the checks and balances created under the county executive form of government.  The Charter Law allows the county executive to initiate removal of unclassified employees, but that authority cannot be exercised without affording such persons notice of the contemplated action and a public hearing if desired.  And the Charter Law provides an important role for

---

[3] In this respect, we disapprove of the Appellate Division's statement that whenever advice and consent is required for appointment to a position, the body in which such advice and consent is reposed also must be involved in the removal of the appointed person from office.  Our analysis relies on a statutory role provided to the board in reaching our result on the proper procedures to be followed to ensure a valid removal. We do not endorse the panel's contrary analysis.

[4] Persons referenced to be "in the _unclassified service_" are persons who do not enjoy the protections of those in the classified status.  Compare N.J.S.A. 11A:3-2 (career service), with N.J.S.A. 11A:3-4 (State unclassified service), and N.J.S.A. 11A:3-5 (political subdivision unclassified service).  Career service employees are granted the right to a hearing and other procedural and substantive protections prior to imposition of certain discipline and removal.  See N.J.S.A. 11A:2-6, -13. Persons in unclassified service do not enjoy corresponding civil service protections.  The Charter Law acknowledges the county's obligation to adhere to civil service requirements in respect of removal, where applicable.  See N.J.S.A. 40:41A-37(d).

22

the board to play at the outset of such disciplinary action, by authorizing the board to issue a resolution to stop the processing of charges against an unclassified employee, and to reject the termination or suspension for a definite period after a public hearing is concluded. That checking process under the Charter Law prevents the county executive from taking unilateral action and establishes a hearing process for unclassified individuals, who enjoy the statutory procedural protections of prior notice of the proposed action and a public hearing opportunity to answer the proposed action and protect reputational interests. Ultimately, the board can decline to impose discipline initiated by the county executive.

Here we have office holders, protected from removal except for certain cause bases, entitled to serve out their terms and to continue in office until their successor is appointed. The for-cause protection from removal of N.J.S.A. 40:14B-16 is not stripped from them by virtue of the authority conferred on a county executive under N.J.S.A. 40:41A-37(c) for lesser-protected employees. Such an interpretation of N.J.S.A. 40:41A-37(c) would expand the authority conferred on the county executive by the Legislature, an action that we are not empowered to take.

More importantly, the County Executive here did not follow the very procedure that the Charter Law requires, if it were to

23

be the sole statute to be complied with under these circumstances, and it is not. The County Executive did not provide to the commissioners notice of the proposed action or opportunity for a public hearing, as N.J.S.A. 40:41A-37(c) requires. She sought to immediately and unilaterally terminate them. That she could not do. Compare N.J.S.A. 40:41A-87(b) (granting board role in termination and providing officer or employee with notice right and opportunity for public hearing), with N.J.S.A. 40:41A-42 (granting county executive unilateral authority to terminate county administrator); see also Hudson Cty. Bd. of Chosen Freeholders v. Clark, 203 N.J. Super. 102, 106-07 (App. Div.) (recognizing same), certif. denied, 102 N.J. 340 (1985). In sum, the County Executive's action ordering the immediate termination of the seven Authority commissioners was not conducted in accordance with her authority under N.J.S.A. 40:41A-37(c), and her unilateral action was contrary to and in violation of N.J.S.A. 40:14B-16, with which she had to comply.

Finally, we note another reason for finding no conflict between the Charter Law and the MCUAL with respect to removal of commissioners. There are several provisions under the Charter Law that reference the MCUAL. The Charter Law specifically gave counties operating under the optional forms of government the ability to reorganize, alter, or abolish county agencies, so long as required services continued to be provided. But the

24

statute carved out an exception for governmental entities established under the MCUAL:

> All county offices, boards, commissions and authorities authorized or established by statute, other than an authority organized under the "municipal and county utilities authorities law," P.L.1957, c.183 (C.40:14B-1 et seq.), those boards and offices which are subject to the provisions of subsection b. of section 125 of P.L.1972, c.154 (C.40:41A-125), and other than educational institutions authorized or established pursuant to Title 18A of the New Jersey Statutes, shall be considered to be county agencies for the purposes of this section.
>
> [N.J.S.A. 40:41A-30 (emphasis added).]

The Sponsor's Statement to the 1997 amendment that added the language exempting utilities authorities provided as follows:

> This bill would prohibit the board of freeholders of a county organized under the "Optional County Charter Law," P.L. 1972, c. 154 (C. 40:41A-1 et seq.), from purging the members of a county utilities authority through its power to "reorganize" an authority pursuant to section 30 of P.L. 1972, c. 154 (C. 40:41A-30). The "municipal and county utilities authorities law," P.L. 1957, c. 183 (C. 40:14B-1 et seq.), contains sufficient procedures for dissolving an authority or removing authority members for inefficiency, neglect of duty or misconduct in office that a freeholder board should not need to resort to a vague "reorganization" power that has a great potential for political abuse.
>
> [Sponsor's Statement to S. No. 1891 (1997).]

We find that statutory section and history supportive of our conclusion.

25

Accordingly, we affirm the judgment of the Appellate Division, and that of the trial court, that declared the County Executive's termination of the seven commissioners to be ultra vires and void.

VI.

With respect to the Authority's challenge to the County Executive's exercise of her veto power over the Authority's minutes approving the inclusion of the $5000 stipend paid as compensation to Authority commissioners, as well as inclusion of funds for the provision of health benefits to the commissioners, we take each issue in turn.

A.

Having determined that commissioners have protected rights under the MCUAL that must be respected if harmonization is possible between that Act and the Charter Law, we turn to the stipend question. N.J.S.A. 40:14B-17 provides utilities commissioners absolute protection from reduction in compensation, unless they consent to a reduction, during the term of their office. Under N.J.S.A. 40:14B-17, the compensation to be paid to commissioners was placed in the hands of the governing body when the Authority was reorganized. The board of freeholders held the power to set compensation in the reorganizing resolution that created the modern Authority existing in Bergen County and to make the compensation subject

26

to annual or other limitations established in that original 1979 resolution.

Although the county executive has broad authority to exercise her veto power over Authority minutes on a wide range of substantive topics, see N.J.S.A. 40:41A-37(h), that power must be harmonized with other more specific protective legislation, such as N.J.S.A. 40:14B-17. Hence, our analysis depends on an interpretation of the 1979 resolution when the board of freeholders exercised the authority granted to it under N.J.S.A. 40:14B-17.

The resolution is not a model of clarity for it is brief in structure yet encompasses the accomplishment of many tasks called for in an original reorganizing resolution. As noted previously, the resolution authorized the reorganization, see N.J.S.A. 40:14B-4(a), established the required staggered terms for reappointed members of the previous sewer authority, who were named newly appointed members of the seven-member utilities authority, see N.J.S.A. 40:14B-4(a), (b)(1), and -6(b), and established a $5000 annual stipend for the first-appointed named commissioners of the new reorganized Authority.

The County Executive argues, and the Appellate Division determined, that the language in the 1979 resolution merely authorized $5000 stipends for the named persons in the resolution. That is one possible reading. However, it does not

27

take into account that the resolution had to name individually the reappointed commissioners from the predecessor sewer authority and that the resolution had to identify the specific staggering of terms for the reappointed commissioners to the newly created entity under the directions provided by statute. In that context, the board had the opportunity to provide for compensation to be paid to the commissioners and it did so, referencing an annual $5000 stipend. It did not add any specific limitation that gives the direction that the County Executive, and the Appellate Division, read into the language.

The language is ambiguous. Yet, we have the benefit of decades of practice that treated the $5000 stipend as the compensation that came with appointment to the position of commissioner. It is unreasonable to ignore that past practice. It is unreasonable to ignore that the Board held in its hands the opportunity to alter the compensation practice being uniformly followed by passing a subsequent resolution. See N.J.S.A. 40:14B-17. It did not do so until after this dispute between the County Executive and the Authority arose. In light of the totality of circumstances, we are loath to interpret the ambiguous wording of the 1979 resolution as not having set an annual compensation (the $5000 stipend) that would be paid to commissioners upon appointment to a term on the Authority. We so hold and therefore reverse the judgment of the Appellate

28

Division.  The County Executive's use of the veto power to diminish the compensation being paid to the Authority commissioners violated N.J.S.A. 40:14B-17 and must be declared void.

B.

We do not reach the same conclusion in respect of health benefits to the commissioners.  Applying the same analysis as used in respect of the stipend, we find affirmance of the County Executive's use of her veto power to be straightforward.

It is apparent from the record that the Board of Freeholders never authorized by resolution the provision of health benefits to Authority commissioners as part of any compensation permitted under N.J.S.A. 40:14B-17.  To the extent that the Authority commissioners took it upon themselves to authorize those benefits for themselves and to include provision for the cost of those benefits within the overall budgetary line that encompassed benefits provided to Authority employees, that action was subject to review by the County Executive during her scrutiny of the minutes of the Authority's meeting that approved such budget action.  Her supervisory authority to review and reject Authority action through her veto power under N.J.S.A. 40:41A-37(h) is broad and easily encompasses authority to disapprove such administrative action affecting the cost of services by the Authority.  The County Executive's determination

29

to veto that portion of the minutes, and thereby to prevent the provision of health benefits to the commissioners, was well within her prerogative.

We therefore affirm the judgment of the Appellate Division that affirmed that use of the County Executive's veto authority.

## VI.

The judgment of the Appellate Division is affirmed in part and reversed in part.


CHIEF JUSTICE RABNER, JUSTICES ALBIN and FERNANDEZ-VINA, and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUSTICE PATTERSON and JUSTICE SOLOMON each filed separate opinions, concurring in part and dissenting in part.

NORTHWEST BERGEN COUNTY
UTILITIES AUTHORITY,

    Plaintiff-Appellant
    and Cross-Respondent,

       v.

KATHLEEN A. DONOVAN, COUNTY
EXECUTIVE OF THE COUNTY OF
BERGEN, and COUNTY OF BERGEN,

    Defendants-Respondents
    and Cross-Appellants,

       and

BERGEN COUNTY BOARD OF CHOSEN
FREEHOLDERS,

    Defendant.

JUSTICE SOLOMON, concurring in part and dissenting in part.

The people of Bergen County adopted, by a 1985 referendum, the county executive form of government and, through a clear and unambiguous mandate, conferred upon their County Executive broad authority to manage county affairs. I join the majority's holding that the County Executive had the authority to veto the provision of health benefits to the commissioners of the Northwest Bergen County Utilities Authority (the Authority). However, I cannot agree with the majority's conclusions that the County Executive did not have the statutory authority under the

Optional County Charter Law (the Charter Law), N.J.S.A. 40:41A-31 to -41, to veto compensation for commissioners and to remove them from office. I am compelled to dissent because "[i]t is not our function to rewrite a plainly written statute or to presume that the Legislature meant something other than what it conveyed in its clearly expressed language." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

I.

In 1972, the Charter Law was passed by the Legislature and signed by the Governor, enabling voters to choose the form of county government they believe will be most efficient and cost effective. See N.J.S.A. 40:41A-26 ("The intent of this act is to enable a county that has adopted a charter pursuant to this act to cause any duty that has been mandated to it by the Legislature to be performed in the most efficient and expeditious manner[.]").

The people of Bergen County specifically chose to have their county "governed by [the county executive plan], by the provisions of [the Charter Law] applicable to all optional plans, and by all general laws[.]" N.J.S.A. 40:41A-25. Recognizing that some of the newly adopted provisions under the Charter Law clashed with general laws, the Legislature directed

2

that the Charter Law prevail over inconsistent provisions of a general law:

> For the purposes of this act, a "general law" shall be deemed to be such law or part thereof, heretofore or hereafter enacted, that:
>
> a. <u>Is not inconsistent with this act</u>; and
>
> b. Is by its terms applicable to or available to all counties, or;
>
> c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare.
>
> [<u>N.J.S.A.</u> 40:41A-26 (emphasis added).]

Therefore, provisions of the Municipal and County Utilities Authorities Law, <u>N.J.S.A.</u> 40:14B-1 to -78 (MCUAL), as a general law, must yield if inconsistent with provisions of the Charter Law. At issue here are the differences between the MCUAL and the Charter Law regarding the scope of the County Executive's veto and removal power.

II.

A.

Beginning with the County Executive's veto powers, under the Charter Law, the County Executive has discretion to veto within ten days of delivery "all or part of the minutes of every meeting of a county authority organized pursuant to the

3

provisions of [the MCUAL]." N.J.S.A. 40:41A-37(h). By deliberately choosing the unambiguous language "all . . . of the minutes of every meeting," the Legislature unequivocally provided the County Executive with broad veto power. See O'Connell v. State, 171 N.J. 484, 488 (2002) ("Where a statute is clear and unambiguous on its face and admits of only one interpretation, a court must infer the Legislature's intent from the statute's plain meaning." (citing V.C. v. M.J.B., 163 N.J. 200, 217, cert. denied, 531 U.S. 926, 121 S. Ct. 302, 148 L. Ed. 2d 243 (2000))).

The majority cites N.J.S.A. 40:14B-17 of the MCUAL as a limitation on the County Executive's veto power. That section allows the Board of Freeholders to pass a "resolution, ordinance or parallel ordinances for the creation of a municipal authority or for the reorganization of a sewerage authority as a municipal authority," and to set forth the level of compensation for commissioners "within the limitations stated in such resolution, ordinance or parallel ordinances." N.J.S.A. 40:14B-17 further provides that "[t]he said provisions or limitations stated in any such resolution, ordinance or parallel ordinances may be amended or added by subsequent resolution, ordinance or parallel ordinances, as the case may be," but may not "reduc[e] any such [compensation] . . . as to any member of the municipal authority

4

then in office except upon the written consent of such member."
N.J.S.A. 40:14B-17 (emphasis added).

My colleagues claim that N.J.S.A. 40:41A-37(h) of the Charter Law, describing the County Executive's veto power, conflicts with N.J.S.A. 40:14B-17 of the MCUAL, but ignore the Legislature's 2010 amendment to the MCUAL which confirmed the County Executive's broad powers to veto any action taken by the Authority. L. 2010, c. 52, § 3 (codified at N.J.S.A. 40:14B-14(b)). Indeed, N.J.S.A. 40:14B-14(b) of the MCUAL specifically provides that the minutes of every authority meeting are subject to veto by the County Executive:

> The minutes of every meeting of an authority created by a county organized pursuant to the provisions of the "county executive plan" of the "Optional County Charter Law," P.L.1972, c.154 (C.40:41A-1 et seq.)[5] shall be delivered by the end of the fifth business day following the meeting, except as otherwise provided in subsection d. of this section, by and under the certification of the secretary of the authority to the county executive. Except as otherwise provided in subsection d. of this section, no action taken at a meeting by the members of an authority shall be effective

---

[1] Although the Authority was "created" before Bergen County adopted the county executive plan, the Sponsor's unqualified Statement to the bill evidences that N.J.S.A. 40:14B-14(b) is applicable to all counties "organized" under the "Optional County Charter Law": "This Bill gives the county executives in counties organized pursuant to the provisions of the 'Optional County Charter Law' . . . the power to review and approve or veto, within 10 days of delivery, all or part of the minutes of every meeting of . . . any county utilities organized pursuant to the provisions of [the MCUAL]." Sponsor's Statement to Assembly No. 162 (1995).

5

until approved by the county executive or until 10 days after the copy of the minutes shall have been delivered. If, within the 10-day period, the county executive returns to the authority and to the board of freeholders the copy of the minutes with a veto of any action taken by the authority or any member thereof at a meeting, together with a written explanation of the reasons for his veto of the action, that action shall be of no effect unless the board of freeholders overrides the veto of the action by a majority vote of its full membership within 10 days of the receipt of the veto action. The county executive may approve all or any part of an action taken at a meeting prior to the expiration of the 10-day period. If the county executive takes no action with respect to the minutes within the 10-day period, the minutes shall be deemed to be approved. The veto powers accorded under this subsection shall not affect in any way the covenants contained in the bond indentures of the authority, or any collective bargaining agreement or binding arbitration decisions affecting employees of the authority.

[(Emphasis added).]

Nevertheless, the majority perceives a conflict between the Charter Law and MCUAL, and concludes that the Charter Law "must be harmonized with other more specific protective legislation such as N.J.S.A. 40:14B-17 [of the MCUAL]," ante at __ (slip op. at 27), ignoring the Legislature's 2010 amendment to the MCUAL reflected in N.J.S.A. 40:14B-14(b). Even if an inconsistency does exist, there is no basis for the majority to disobey our Legislature's directive that the Charter Law prevail over inconsistent provisions of a general law, such as the MCUAL. N.J.S.A. 40:41A-26.

6

Furthermore, if it is assumed that the unambiguous language of the Charter Law does not resolve whether the County Executive possessed the power to veto authority minutes providing salaries to commissioners, it remains that: (1) the Legislature's 2010 amendment to the MCUAL confirmed the County Executive's broad powers to veto any action taken by the Authority, N.J.S.A. 40:14B-14(b);[6] (2) the Board of Freeholders passed a 1979 Resolution creating the Authority and establishing "annual" compensation only for the commissioners named in the Resolution; (3) the language of the Resolution specifically states that the stipends to the named commissioners terminated at the end of their respective terms; and (4) the Board did not pass a new resolution, ordinance, or parallel ordinance providing compensation for subsequently appointed Authority commissioners pursuant to N.J.S.A. 40:14B-14.

Still, the majority attempts to justify its conclusions regarding the County Executive's power to veto stipends for commissioners by noting that prior County Executives never vetoed the Authority's thirty-year-long practice of paying stipends to its commissioners. The majority also claims the Board of Freeholders condoned the Authority's practice by not passing a subsequent resolution to alter that practice. As

---

[2] The majority agrees that the County Executive's veto is valid as to health benefits provided to commissioners.

7

noted above, however, N.J.S.A. 40:14B-17 of the MCUAL places an affirmative obligation on the Board of Freeholders to pass a resolution, ordinance, or parallel ordinance outlining compensation for Authority commissioners. Plainly, the compensation scheme for the inaugural members of the Authority was to cease when their terms ended -- there is no other "possible reading." Therefore, subsequent commissioners' compensation could not have enjoyed the purported protection of the MCUAL.

B.

The majority's decision to restrict the County Executive's removal power is similarly mistaken. N.J.S.A. 40:41A-37(c) of the Charter Law provides that the County Executive "[m]ay, at his discretion, remove or suspend any official in the unclassified service of the county over whose office the county executive has power of appointment in accordance with the provisions of section [N.J.S.A. 40:41-]87(b)." Since it is undisputed that "any official in the 'unclassified service'" of the county includes the commissioners of the Authority,[7] and

_____

[3] Under N.J.A.C. 4A:3-1.3(a)(4), an official is in "unclassified service" when "[a] specific statute provides that incumbents in the title serve for a fixed term or at the pleasure of the appointing authority[.]" The Authority commissioners here are officials in the "unclassified service" of the county because they serve at the pleasure of the County Executive. See N.J.S.A. 40:41A-37(b) (granting County Executive authority to appoint "members of . . . authorities"); see also N.J.S.A.

since the County Executive has the authority to appoint members of county commissions subject to the Freeholder Board's advice and consent, N.J.S.A. 40:41A-37(b),[8] the County Executive has exclusive and discretionary power to remove commissioners of the Authority. N.J.S.A. 40:41A-37(c). As stated previously, this provision of the Charter Law trumps any inconsistency found in the MCUAL regarding removal of commissioners. N.J.S.A. 40:41A-26.

Nonetheless, if we, once again, consider the two statutes in an effort to "harmonize" them, the MCUAL provides that the "governing body"[9] may remove "a member of a municipal authority" for cause only:

> A member of a municipal authority may be removed only by the governing body by which he was appointed and only for inefficiency or neglect of duty or misconduct in office and after he shall have been given a copy of the charges against him and, not sooner than 10 days thereafter, had opportunity in person or by counsel to be heard thereon by such governing body.

40:41A-37(c) (granting County Executive discretionary authority to remove Authority commissioners).

[4] The majority concedes that the County Executive has the appointment power over commission members. See also N.J.S.A. 40:41A-37(b) (stating that the County Executive, "[w]ith the advice and consent of the board, shall appoint . . . the members of all county boards, commissions and authorities").

[5] Under both the Charter Law and the MCUAL, "governing body" is defined as both the Board of Freeholders and the County Executive. N.J.S.A. 40:14B-3(3); N.J.S.A. 40:41A-32(b).

9

[N.J.S.A. 40:14B-16.]

The majority relies upon the legislative history of N.J.S.A. 40:41A-30 to argue that N.J.S.A. 40:41A-37(c) of the Charter Law and N.J.S.A. 40:14B-16 of the MCUAL regarding removal of commissioners are not inconsistent. However, the Sponsor's Statement for N.J.S.A. 40:41A-30 explains that N.J.S.A. 40:14B-16 applies when the Board of Freeholders seeks to purge members of a utilities authority by using its power to reorganize. Sponsor's Statement to Senate Bill No. 1891 (1997). Here, the Authority is not being purged through reorganization[10] by the Board of Freeholders; seven of the nine commissioners are being terminated by the County Executive in the exercise of her authority under N.J.S.A. 40:41A-37(c) of the Charter Law. While both the MCUAL and the Charter Law speak to the removal of members of the Authority, the MCUAL's allowance of removal of a commissioner only for cause cannot be reconciled with the broad, discretionary authority afforded to the County Executive under the Charter Law and must yield to N.J.S.A. 40:41A-26.

I concede that the County Executive's removal power under the Charter Law is subject to the due process requirements of N.J.S.A. 40:41A-87(b) and that the County Executive's authority

---

[6] There was no hearing conducted and no record established in this regard.

10

to terminate the commissioners "effective immediately" is not found in the Charter Law:

> a. [T]he board may, by a resolution of disapproval, adopted by a two-thirds vote of the whole number of the board, prevent the dismissal of certain employees under conditions as set forth in subsection b. of this section.
>
> b. <u>Suspensions will take effect immediately upon personal service of notice setting forth the order of suspension or dismissal. Dismissal or suspension for a definite term shall occur automatically in 30 calendar days from receipt of notice. But, if the officer or employee requests a public hearing on his dismissal or suspension for a definite term, no action beyond temporary suspension may be taken until the individual to be suspended or dismissed is given a public hearing</u> not less than 15 nor more than 30 days after personal service of written notice of contemplated action. A copy of such notice shall be filed with the clerk to the board of freeholders immediately upon service of notice to the individual to be suspended or dismissed. In the event that within 35 days of receiving such notice, the board shall pass by a two-thirds vote of the whole number of the board, a resolution of disapproval, all proceedings and any suspension or dismissal of the individual shall be voided.
>
> . . . .
>
> If, however, the suspension or dismissal order shall allege that the individual against whom action is contemplated or pending has committed a criminal act in the conduct of his public trust, no resolution of the board shall stay proceedings and the matter shall be brought to a public hearing in the manner prescribed above. If at that hearing probable cause for prosecution is found, all evidence

11

> shall immediately be forwarded to the county prosecutor for further action.
>
> [N.J.S.A. 40:41A-87(a), (b) (emphasis added).]

However, contrary to the majority's conclusion that the dismissed commissioners were denied their right to a public hearing, N.J.S.A. 40:41A-87(b) requires a public hearing if requested, or "the suspension or dismissal order . . . allege[s] that the individual against whom action is contemplated or pending has committed a criminal act in the conduct of his public trust."  (Emphasis added).  That is not the case here, where the dismissals were not premised upon "a criminal act" by commissioners in the conduct of their "public trust."

Furthermore, all seven commissioners in this matter were personally notified of the County Executive's termination decision by mail on April 16, 2012.  Thereafter, no commissioner sought relief from the County Executive's action in accordance with the appeals process provided by the Charter Law, N.J.S.A. 40:41A-87(b), which states that "[d]ismissal or suspension for a definite term shall occur automatically in 30 calendar days" unless the dismissed or suspended officer or employee requests a public hearing after receipt of notice, or the Board of Freeholders, by a two-thirds vote, vetoes the suspension or removal before or after the hearing.

12

The dismissed commissioners never requested a public hearing, and nothing in the record indicates that the commissioners requested intervention by the Board of Freeholders.  Instead, the Authority -- not the dismissed commissioners -- filed a complaint in lieu of prerogative writ with the Superior Court seeking review of the County Executive's termination action.  Therefore, the commissioners failed to satisfy the procedural requirements of N.J.S.A. 40:41A-87 and, hence, their termination was final thirty calendar days after the commissioners received notice of their termination by mail on April 16, 2012.  Accordingly, the County Executive properly exercised her statutory right to remove the seven commissioners of the Authority.

                              III.

As the majority correctly points out, this Court has a duty to "harmonize the provisions of all statutes that the Legislature has enacted for implementation affecting the subjects involved."  Ante at __ (slip op. at 14).  However, that duty does not permit this Court to ignore a clear legislative directive.  In light of the unambiguous command by the Legislature, the MCUAL must give way to the Charter Law in cases of conflict.  There is no basis for the conclusion "that the Legislature intended for its two statutory schemes -- the Charter Law and the MCUAL -- to generally work harmoniously, not

13

in conflict with one another" and, therefore, I concur in part, and dissent in part.

NORTHWEST BERGEN COUNTY
UTILITIES AUTHORITY,

    Plaintiff-Appellant
    and Cross-Respondent,

       v.

KATHLEEN A. DONOVAN, COUNTY
EXECUTIVE OF THE COUNTY OF
BERGEN, and COUNTY OF BERGEN,

    Defendants-Respondents
    and Cross-Appellants,

      and

BERGEN COUNTY BOARD OF CHOSEN
FREEHOLDERS,

    Defendant.

JUSTICE PATTERSON, concurring and dissenting.

I join the Court's opinion insofar as it holds that defendant Kathleen A. Donovan, County Executive of the County of Bergen (County Executive), lacked the authority to remove the commissioners of the Northwest Bergen County Utilities Authority (Authority), under the applicable provisions of the Optional County Charter Law, N.J.S.A. 40:41A-31 to -37, and the Municipal and County Utilities Authorities Law, N.J.S.A. 40:14B-1 to -78. See ante at ___ (slip op. at 20-26). I also join the Court's opinion to the extent that it holds that the County Executive

had the authority, pursuant to N.J.S.A. 40:41A-38(p), to reject by veto the Authority commissioners' authorization of health benefits for themselves.  See ante at ___ (slip op. at 29-30). I respectfully disagree with the Court's holding that the County Executive lacked authority under N.J.S.A. 40:41A-38(p) to veto the Authority's minutes providing for the payment of salaries to Authority commissioners.  I join Justice Solomon's concurring and dissenting opinion with respect to that issue.  See ante at ___ (slip op. at 3-8) (Solomon, J., concurring in part and dissenting in part).

2