573 A.2d 209

NICHOLAS R. AMATO, ESSEX COUNTY EXECUTIVE, PLAINTIFF–
APPELLANT, v. BOARD OF CHOSEN FREEHOLDERS OF THE
COUNTY OF ESSEX AND BARRY SKOKOWSKI, SR., DI-
RECTOR OF THE DIVISION OF LOCAL GOVERNMENT SER-
VICES IN THE DEPARTMENT OF THE TREASURY, DEFEN-
DANTS–RESPONDENTS, AND HUDSON COUNTY BOARD OF
CHOSEN FREEHOLDERS, INTERVENOR.

Superior Court of New Jersey
Appellate Division

Argued March 26, 1990—Decided April 23, 1990.

Stern, J.A.D., concurred and filed opinion.

Before Judges O'BRIEN, HAVEY and STERN.

*H. Curtis Meanor,* Essex County Counsel, argued the cause for appellant (*Norman Schulanear,* Assistant County Counsel, on the briefs).

*Robert J. Sussman,* Deputy Counsel, argued the cause for respondent Essex County Board of Freeholders (*Thomas M. McCormack,* attorney; *Robert J. Sussman* on the brief).

All other defendants and intervenor joined in the brief of respondent Essex County Board of Chosen Freeholders.

The opinion of the court was delivered by

HAVEY, J.A.D.

Plaintiff Nicholas R. Amato, Essex County Executive, appeals from a judgment entered in the Law Division dismissing his declaratory judgment action against defendants Essex County Board of Freeholders (Board) and Barry Skokowski, Sr., Director of the Division of Local Government Services, Department of the Treasury (Director). The gravamen of plaintiff's complaint is that the Board was without authority to amend the 1989 county budget submitted by plaintiff without his "concurrence." In dismissing plaintiff's complaint, the trial judge concluded that the Board has the exclusive legislative power to adopt and amend county budgets pursuant to the Local Budget

Law, *N.J.S.A.* 40A:4-1 *et seq.* (Budget Law). We agree and now affirm.

The facts are not in dispute. Essex County is governed by the county executive plan of government pursuant to the Optional County Charter Law, *N.J.S.A.* 40:41A–31 *et seq.* (Charter Law). Plaintiff has been the Essex County Executive since January 1, 1987.

On or about March 30, 1989, plaintiff submitted to the Board the county's 1989 operating and capital budget. Upon the Board introducing the proposed budget for public hearings, various Board members announced their intention to amend it without referring the proposed amendments back to the county executive for his consideration and approval. Plaintiff responded by filing the present action by verified complaint, seeking a judgment declaring that the Board was limited to either approving or disapproving the 1989 budget as submitted by plaintiff, and that the Board is without authority to modify or amend the budget without his "approval and concurrence[.]"[1] Plaintiff also sought to enjoin the Board from adopting any budget that has "not been approved" by him, and the Director from certifying the amended budget pursuant to the Budget Law, *N.J.S.A.* 40A:4-1 *et seq.*

Plaintiff's argument in the Law Division, repeated on appeal, was that the Budget Law, *N.J.S.A.* 40A:4-4 and –9b, provides that budgets shall be adopted and amended by the "governing body." Plaintiff then pointed to the Charter Law, *N.J.S.A.* 40:41A–32b, which provides in part:

---

[1] We were advised at oral argument that the disputed aspects of the 1989 budget were resolved, and the budget was adopted subsequent to trial. However, because the issue has again been raised in 1990 and will no doubt continue to be raised, and because of its public importance, we decline to dismiss the appeal as being moot. *See Matter of Conroy,* 98 *N.J.* 321, 342, 486 *A.*2d 1209 (1985); *Vasquez v. Glassboro Service Ass'n, Inc.,* 83 *N.J.* 86, 94, 415 *A.*2d 1156 (1980).

> In each county operating under this article, the term "governing body" of the county shall be construed to include *both the board of freeholders and the county executive.* [Emphasis added].

He therefore reasoned that, since he was a member of the "governing body," the Board could not adopt an amendment to the budget without his "concurrence."

In dismissing plaintiff's complaint, the trial court concluded that notwithstanding the Charter Law's definition of "governing body," under other specific provisions of the Charter Law the county executive has only administrative and executive powers, which do not include control over the budget process. That process is governed by the specific provisions of the Budget Law, which defines "governing body" to mean the board of chosen freeholders. *N.J.S.A.* 40A:4–2. Thus, amendments to and adoption of the budget is the exclusive legislative function of the Board. We agree.

Plaintiff's assertion that he has "concurr[ing]" power over budget amendments is predicated on a perceived conflict between the definitions of "governing body" found in the Charter Law and Budget Law. Plaintiff acknowledges that the Budget Law defines "governing body" to mean the board of chosen freeholders, but argues that this definition must give way to the definition of "governing body" under section –32b of the Charter Law, which was added to the law in 1978. *See L.*1978, *c.* 141, § 1. This is so, plaintiff asserts, because a Charter Law county is governed by the terms of the plan adopted, by provisions of the Charter Law and by all general laws that are "not inconsistent with this act[.]" *N.J.S.A.* 40:41A–25, –26. He reasons that because the Budget Law's definition of "governing body" is "inconsistent" with the definition found in the Charter Law, the latter must prevail.

It is true that there appears facially an apparent conflict between the Charter Law and the Budget Law in their respective definitions of "governing body." It is also true that if the Budget Law is a "general law" and a conflict exists, the definition under section –32b must prevail. However, reading

each statute in the context of its respective purpose and legislative scheme, they are easily reconciled.

We do not view the Charter Law's definition of "governing body" as intending to amend in a wholesale manner all general laws so that reference in these laws to the "governing body" shall be deemed to include both the county executive and board of freeholders. We read section –32b as nothing more than an affirmation of the separation of powers between the county executive and board of freeholders, established by the Charter Law, which did not exist under prior law. The second sentence of section –32b makes this clear by stating that:

> ... all administrative or executive functions heretofore assigned by general law to the board of freeholders shall be exercised by the county executive, and ... all legislative ... functions heretofore assigned by general law to the board of freeholders shall be exercised by the board, all in accordance with the separation of powers provided for in section 86 of the act[.]

Thus, section –32b is a simple declaration that the "checks and balances" essential to sustain a county executive form of government permits both the county executive and board to be members of the "governing body," but only for the purpose of carrying out their respective duties and powers. Stated differently, under the county executive form of government, all the functions previously performed solely by the freeholders are now divided between the board of freeholders and county executive (depending upon whether the functions are executive or legislative) who collectively constitute the governing body of the county. *See Shapiro v. Essex Cty. Freeholder Bd.*, 183 *N.J. Super.* 24, 28, 443 *A.*2d 219 (App.Div.), aff'd o.b. 91 *N.J.* 430, 431, 453 *A.*2d 158 (1982).

For example, the county executive is a member of the "governing body" for the purpose of exercising all "administrative or executive functions" including the duty to "[p]repare and submit" to the board the annual operating and capital budgets. *N.J.S.A.* 40:41A–36b. The board, in turn, is a member of the "governing body" for the purpose of exercising its legislative power to "approve the annual operating and capital budgets

pursuant to the Local Budget Law." *N.J.S.A.* 40:41A–41g. Nothing in the Charter Law suggests that each branch of government shall share in their respective powers and duties, or have the power to "concur" in the other's actions.

The definition of "governing body" in the Budget Law, on the other hand, is part of a discrete mechanism for the introduction and adoption of budgets which is applicable to all county governments, including the Charter Law forms. The Budget Law provides that all budgets "shall be introduced, approved, amended and adopted by resolution passed by not less than a majority of the full membership of the governing body." *N.J. S.A.* 40A:4–4. The Budget Law also provides that the "governing body" may amend the budget during or after the public hearing. *N.J.S.A.* 40A:4–9b. Also, as stated, it defines "governing body" to mean the board of chosen freeholders. *N.J. S.A.* 40A:4–2.

The explicit provisions of the Charter Law, which incorporate by reference the Budget Law, make it clear that the Legislature intended that *all* of the provisions of the Budget Law shall control the budget process. As we have noted, *N.J.S.A.* 40:41A–41g provides that the board "[s]hall approve the annual operating and capital budgets *pursuant to the Local Budget Law.*" (Emphasis added). *N.J.S.A.* 40:41A–38o provides that the board shall adopt the budget by resolution, as specified in the "Local Budget Law." Further, preparation and submission of the budget, the budgetary process, and the scope of the budget and budget message are all subject to the requirements of the Budget Law. *See N.J.S.A.* 40:41A–133 through –138. It is illogical to conclude that the Legislature intended that the entire Budget Law mechanism shall be incorporated into the Charter Law except for the Budget Law's definition of "governing body."

The Budget Law as well leaves no doubt that the board has the exclusive legislative function, as the governing body, to introduce, approve, advertise, conduct public hearings, amend

and adopt the budget. *See N.J.S.A.* 40A:4–2 through –9. The law is specific legislation dealing only with budgets, and makes no reference to a county executive and does not confer upon him any power or control over the budget process after he prepares and submits the budget to the board. *See Blasi v. Ehret,* 118 *N.J.Super.* 501, 502–503, 288 *A.*2d 861 (App.Div. 1972) (county supervisor, under *N.J.S.A.* 40A:9–40, does not have the power to veto approval and adoption of a county budget by the board of freeholders). In our view, if the Legislature intended to vest in the county executive the power to "concur" in the amendment, approval or adoption of the budget, it would have so stated in both the Charter Law and Budget Law.

The concurring opinion intimates that since *N.J.S.A.* 40:41A–41g provides only that the board shall "approve" the annual budget, the statute does not give the board the power to "amend" or "adopt" a budget without the county executive's concurrence. However, as noted, the statute gives the board the power to "approve" the annual budget *"pursuant to the Local Budget Law."* (Emphasis added). The Budget Law cannot be any clearer. All budgets "shall be introduced, approved, *amended* and adopted" by not less than a majority of the full membership of the governing body, the board of freeholders. *N.J.S.A.* 40A:4–4 (emphasis added).

Moreover, the trial court's interpretation of the pertinent statutory provisions is both logical and consistent with legislative goals. The county executive has the expertise, staff and facilities to "prepare and submit" the budget, as well as the means and resources to implement it once it is adopted by the board, by exercising his executive powers and duties under *N.J.S.A.* 40:41A–36 and –37. The Legislature obviously recognized, that to sustain proper checks and balances between the executive and legislative branches, the board should have the exclusive power to approve, amend and adopt the budget, as submitted by the county executive, in order to carry out its important legislative and policy-making functions.

This interpretation is also supported by the legislative history of the Charter Law. The 1973 New Jersey County and Municipal Government Study Commission handbook, prepared upon adoption of the Charter Law, provides in part as follows:

> *Comment on Sec. 41* The legislative power of county government is vested exclusively in the Board of Freeholders. Under this plan, the Board further has sufficient legal authority to oversee the operations of all county government. The Board is given the power to advise and consent to nominations, to override the Executive's removal powers, to overrule the Executive's veto and to *approve and modify the budget.* [Pane, "Handbook for County Charter Study Commissioners," Appendix E at 16 (1973) (emphasis added)].

The handbook also makes clear that the power to "approve and modify" the budget, as well as the other grants of power, "effectively provide a legislative check on the power of the independently elected Executive *and assure legislative safeguards over the operations of county government as part of a system of checks and balances." Ibid.* (emphasis added). It is true that the handbook was issued prior to the 1978 amendment to *N.J.S.A.* 40:41A–32, which added to the Charter Law the definition of "governing body." However, as we have stated, we construe section –32b as simply being a declaration of the divided functions of the county executive and freeholders who collectively constitute the "governing body."

Moreover, we reject plaintiff's position because it would, in our view, lead to absurd results. *See State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966); *Galanter v. Planning Bd. of Tp. of Howell,* 211 *N.J.Super.* 218, 221, 511 *A.*2d 702 (App.Div.1986). If plaintiff is a member of the "governing body" for the purpose of concurring in amendments to the budget, it must follow that he is also a member for the purpose of introducing, approving and adopting the budget by resolution passed by "not less than a majority of the full membership of the governing body." *N.J.S.A.* 40A:4–4. Does that mean that he is a tenth member (including the nine freeholders) for the purpose of determining whether there is a majority of the full membership of the governing body necessary to adopt the budget? No one can seriously argue that this is so.

Also, the legislative power of the board must be exercised by ordinance, except for specific, enumerated powers which may be exercised by resolution under *N.J.S.A.* 40:41A–38, including "[a]ctions specified as resolutions in the 'Local Budget Law.'" *N.J.S.A.* 40:41A–38o. The county executive has the power to "veto" any ordinance, *N.J.S.A.* 40:41A–37g, but has no such power over board resolutions. In turn, the board has the power to override an ordinance veto by a vote of two-thirds of the full membership of the board. *Ibid; N.J.S.A.* 40:41A–41f. Despite plaintiff's characterization of his right to "concur" in a budget amendment, if he is correct, he has what is tantamount to a veto power over the amended budget since the board could not adopt it without his "concurrence." The illogical result of this interpretation is that the board could not override the "veto," because the budget was not adopted by ordinance. Such a result would permit the county executive to monopolize the budget process and render the board's legislative powers enumerated in the Charter Law and Budget Law a complete nullity.

Finally, plaintiff points to a provision of the Budget Law, *N.J.S.A.* 40A:4–17, and argues that this statute was intended as a "relief valve" in the event there is an impasse between the county executive and board respecting an amendment to the budget. *N.J.S.A.* 40A:4–17 provides that if the Director receives notice that the county has not passed a budget resolution within the time prescribed by the Budget Law, he shall certify an amount required for the county's operation for the fiscal year. That amount shall be based upon the operating budget of the preceding year, with various enumerated adjustments.

Plaintiff misconceives the purpose of *N.J.S.A.* 40A:4–17. This provision was part of the Budget Law long before the Charter Law was adopted. It provides a method by which the Director can certify the amount of taxes to be raised, based on the prior year's budget, in the event the governing body, *i.e.,* the board of freeholders, *see N.J.S.A.* 40A:4–2, is unable to reach agreement on the budget. Nothing in the provision

suggests that the Director shall intervene and certify if there is an impasse between the county executive and board. Indeed, in our view, such a reading is contrary to sound political process and the public good. The trial court characterized the potential impact of Director certification on the county's operations as "havoc," and even plaintiff's counsel conceded that certification based on the 1988 budget would cause "massive layoffs." Accepting plaintiff's argument that he must concur in any budget amendments would increase substantially the potential for impasse and the consequent adverse effect on the operation of county government.

Affirmed.

STERN, J.A.D., concurring.

The Law Division dismissed this action concluding that the Board of Chosen Freeholders ("Board") can amend the County budget without concurrence of the County Executive and may unilaterally amend and modify his budget proposal prior to adoption by it without veto power by the Executive. The majority of this court agrees with that conclusion. While I agree that the relevant legislation clearly gives the County Executive no veto power with respect to Board resolutions, including those relating to the budget, it is not clear that the Board can amend the Executive's proposal before adoption. I would nevertheless affirm the judgment under the existing statutory complex.

The Local Budget Law, *N.J.S.A.* 40A:4-4, provides in part that:

> All budgets shall be introduced, approved, amended and adopted *by resolution* passed by not less than a majority of the full membership of the *governing body.* (emphasis added).

*N.J.S.A.* 40A:4-9 further provides that "[t]he governing body may amend the budget during or after the public hearing."

The Optional County Charter Act includes the County Executive within the term "governing body," but includes it with respect to other statutes only for "administrative or executive,"

not "legislative and investigative functions." *See N.J.S.A.* 40:41A–32(b). There is no question that we are dealing with both, to some degree. While the Local Budget Law does not include the Executive in the term "governing body," that law does not exclusively control the budget adoption process in counties subject to the County Executive plan pursuant to the Optional County Charter Law, because that law is specific and *N.J.S.A.* 40:41A–32(b) provides that in County Executive plan counties "all administrative or executive functions heretofore assigned by general law to the board of freeholders shall be exercised by the county executive."

*N.J.S.A.* 40:41A–38 provides that the legislative power of the Board "shall be exercised by ordinance, except for the exercise of the ... powers which are required to be, or are permitted to be, exercised by resolution." *N.J.S.A.* 40:41A–38(*o*) includes "[a]ctions specified as resolutions in the 'Local Budget Law' (N.J.S. 40A:4–1 et seq.)", and unlike an ordinance, a resolution is not subject to the veto power of the Executive. *See* 40:41A–37(g). *See also N.J.S.A.* 40:41A–101. Hence, I reject the suggestion that the Executive can veto a resolution of the Board adopting the budget.

However, under the County Executive Plan, only the Executive can "[p]repare and submit to the board for its consideration and adoption an annual operating budget and a capital budget ... and supervise and administer all phases of the budgetary process," *N.J.S.A.* 40:41A–36(b), and only the Board may "approve the annual operating and capital budgets pursuant to the Local Budget Law." *N.J.S.A.* 40:41A–41(g). *N.J.S.A.* 40:41A–41(g) does not give the Board the power to "amend" or "adopt" as well as "approve" the budget—an action otherwise expressly permissible by the "governing body" under *N.J.S.A.* 40A:4–4(b) of the Local Budget Law.[1] *See also N.J.S.A.* 40A:4–9. Given

---

[1] The majority correctly points out that *N.J.S.A.* 40:41A–41(g) provides that the Board "[s]hall approve the annual operating and capital budgets *pursuant*

the nature, duties and powers of the County Executive, *N.J. S.A.* 40:41A–36, –37, it makes little sense to conclude that the Executive's role is to merely present a budget proposal which the Board can amend and approve in any manner it wants, as if the Executive did not exist and as if the County hadn't adopted the County Executive Plan.

I might "harmonize" the statutes by reading the relevant provisions of the Local Budget Law and the County Executive Plan statutes to require the Executive to "propose" and "submit" the budget proposal to the Board which must either "approve" or reject it; and if it rejects the budget, the Executive may propose another until a compromise is reached in a fashion traditional to our form of government.[2] By this process both branches will have significant powers and responsibilities with respect to the budget, as undoubtedly envisioned by the Legislature. *Cf. Shapiro v. Essex Cty. Freeholder Bd.,* 183 *N.J.Super.* 24, 443 *A.*2d 219 (App.Div.1982), *aff'd*, 91 *N.J.* 430, 453 *A.*2d 158 (1982). *See also N.J.S.A.* 40:41A–86. However, that approach would give the County Executive essentially more power than the veto power he can exercise with respect to an ordinance, as the veto of an ordinance is subject to override by the Board, *see N.J.S.A.* 40:41A–37(g), and that degree of power does not appear to have been contemplated or provided by the Legislature. Accordingly, I join the majority and vote to affirm.

Despite the doctrine of "separation of powers," *see N.J.S.A.* 40:41A–32(b), –86, the present statutory complex with respect

---

to the *Local Budget Law"* (emphasis added) which includes the amendment and adoption process. I have reservations regarding whether the underscored words have such significance as emphasized by the majority in light of the reference in the 1978 amendment of *N.J.S.A.* 40:41A–32(b) to *N.J.S.A.* 40:41A–86 and the "separation of powers" doctrine embodied therein.

[2]In the event of an impasse, the budget process could proceed as provided in *N.J.S.A.* 40A:4–17. However, that question need not be fully considered in light of our holding.

to the budget process does not clearly involve both the Executive and Legislative branches of County government in a meaningful way—just as the State and Federal systems do.[3]   In any event, I believe that legislative clarification of the matter is required.

[3]The issue is purely one of legislative intent as the separation of powers doctrine embodied in the State constitution essentially relates to State government.  *See N.J.S.A. Const.* (1947), Art. 3, ¶ 1.  The constitutional principle does not apply to interpretation of a statutory complex which itself creates an executive component of county government.  *See also N.J.S.A. Const.* (1947), Art. 7, § 2 (county officers).