Justice LaVECCHIA
delivered the opinion of the Court.
We are called on to review the authority of the County Executive of Bergen County to have taken certain employment and other actions affecting the Northwest Bergen County Utilities Authority (the Authority). The Authority initiated this action by way of a complaint in lieu of prerogative writs that challenged (1) the County Executive’s unilateral and immediate termination of seven Authority commissioners; (2) the County Executive’s veto of portions of the Authority’s budget related to the commissioners’ salary and health benefits; and (3) the County Executive’s vetoes of Authority action authorizing the taking of an administrative appeal within the Department of Community Affairs. We now affirm in part and reverse in part the Appellate Division judgment that parsed the County Executive’s ability to have taken those actions.
I.
This appeal requires us to address the intersection of statutes governing the Authority and the form of government plan adopted *436 in Bergen County. Before detailing the actions and counteractions taken by the parties, we set forth some preliminary information about the statutory schemes pertaining to each entity and some general background on the entities.
A.
Under the Optional County Charter Law (OCCL or Charter Law) enacted in 1972, see L. 1972, c. 154 (codified originally as N.J.S.A. 40:41A-1 to -144), the people of the counties of New Jersey have the opportunity to select one of the optional forms of government that the law sets forth. Although four plans are authorized, we are concerned here with the county executive form of government.
In 1985, pursuant to the procedures required under law, the people of Bergen County adopted the “county executive plan” prescribed in N.J.S.A. 40:41A-31 to -44 of the Charter Law. That plan of government is subject also to the general provisions set forth in Article 7 of the Charter Law and made applicable to all optional plans under that law. See N.J.S.A. 40:41A-86 to -144 (Article 7).
Under the county executive plan, the term “governing body” of the county is directed to be construed as including both the board of freeholders and the county executive, N.J.S.A. 40:41A-32(b), although the plan recognizes a separation of powers between the two, ibid. Executive powers are conferred on the county executive. See N.J.S.A. 40:41A-36 to -37. Legislative and investigative powers are vested in the board of freeholders. See N.J.S.A. 40:41A-38, -41; see also N.J.S.A. 40:41A-86 (stating general intent to invest boards of freeholders with “such investigative powers as are germane to the exercise of its legislative powers, but to retain in the head of the executive branch full control over the county administration and over the administration of county services”).
The county executive is responsible for the supervision, direction, and control of the administrative departments of the *437 county. N.J.S.A. 40:41A-37(a). Consistent with that authority, the county executive has the authority to appoint the heads of county departments and their divisions. N.J.S.A. 40:41A-37(b). The county executive also has appointment power over “the members of all county boards, commissions and authorities,” subject to the advice and consent of the board of freeholders. Ibid.; see also N.J.S.A. 40:41A-41(a) (granting board power of advice and consent over all appointments for which board confirmation is specified).
B.
Within Bergen County, the Authority operates to provide sewage treatment services in accordance with the Municipal and County Utilities Authorities Law (MCUAL), N.J.S.A. 40:14B-1 to -78. The Authority previously was known as Northwest Bergen County Sewer Authority until it was reorganized under its present name in 1979, pursuant to N.J.S.A. 40:14B-6 and -7.
The reorganization took place before Bergen County adopted the county executive plan of government and therefore the 1979 reorganization occurred through freeholder action. Consistent with MCUAL requirements, the county freeholders passed a 1979 resolution, accomplishing multiple purposes under the MCUAL. The resolution authorized the reorganization, see N.J.S.A. 40:14B-4(a), established the required staggered terms for reappointed members of the previous sewer authority, now newly appointed named members of the seven-member utilities authority, see N.J.S.A. 40:14B-4(a), (b)(1), and -6(b), and established a $5000 annual stipend for the first-appointed named commissioners of the new reorganized Authority, see N.J.S.A. 40:14B-17 (authorizing resolution, which creates reorganized sewerage authority, to provide members with compensation for services within annual or other limitations to be stated in such resolution). The resolution did all that in relatively brief language that stated, after authorizing the reorganization: “the following persons [shall] be appointed as members of the Bergen County Northwest Utilities Authority *438 at an annual salary of $5,000.00 effective immediately!;.]” The resolution then listed the reappointed members, by name, with specific term limits fitting the statutory requirements for staggered terms of varying length.
The MCUAL renders each commissioner an office holder, entitled to retain office for a specific term and until a successor is qualified. See N.J.S.A. 40:14B-16. The MCUAL also provides that a commissioner’s compensation may not be reduced during a member’s term of office except with consent. See N.J.S.A. 40:14B-17. The dispute in this matter concerns the meaning of those promises under the circumstances that occurred in Bergen County.
The term of the last of the commissioners appointed through the original reorganizing resolution expired in 1984. Succeeding commissioners appointed to the Authority, including the ones affected by the County Executive’s actions challenged in this matter, apparently have been paid an annual stipend of $5000 through monies incorporated in annual budget submissions. Based on the record presented in this appeal, there have not been any amenda-tory resolutions passed by the board of freeholders since its 1979 resolution with respect to commissioner compensation, at least not until the events that are challenged in this matter began to unfold.
In or around 2004, the Authority also began providing health benefits, under the State Health Benefits Program, to its commissioners by including provision for same in annual budget submissions. The record reveals that the Bergen County Board of Freeholders never passed a resolution or took other legislative action to specifically authorize those benefits for the commissioners. As best as the record on appeal reveals, the commissioners’ health benefits were not separately identified in budget lines from expenses for the health benefits of the Authority’s employees.
Finally, we note that, until this dispute, no veto action previously was taken in respect of Authority minutes that reflected the commissioners’ actions approving proposed budgets containing *439 expenditures for the stipends or providing for the commissioners’ health benefits.
II.
The series of actions that provide the grist for this appeal commenced with an Authority meeting conducted on November 1, 2011, when the Authority passed a resolution approving its preliminary budget for 2012. The Authority forwarded the proposed budget to the County Executive. Kathleen Donovan, the County Executive during the contested actions involved in this matter, vetoed the portion of the minutes of the Authority’s meeting that approved a budget containing both a $5000 stipend and health care benefits for the individual Authority commissioners.
The Authority sought review of the County Executive’s veto before the Director of the Division of Local Government Services within the Department of Community Affairs (DCA), who determined that the veto was valid and binding. In response, the Authority held an emergency meeting on March 22, 2012, and voted to appeal the Director’s decision to the Local Finance Board within the DCA. The County Executive next vetoed the minutes of the emergency meeting that authorized the appeal, contending that the Authority had violated requirements of the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21.
Although the Authority maintained that its meeting was not flawed by any OPMA violations, it held another meeting on March 28, 2012, to address the County Executive’s OPMA concerns. The Authority again passed a resolution authorizing an appeal to the Local Finance Board. The County Executive subsequently vetoed the portion of the minutes of that meeting that authorized the appeal. The County Executive also vetoed the portion of the minutes that approved use of Authority funds to finance the appeal.
After the Authority refused to amend its 2012 budget to remove the budgetary provision that funded a $5000 stipend and health *440 care benefits for the commissioners, the County Executive summarily dismissed seven of the nine commissioners.[1]
The Authority filed a complaint in lieu of prerogative writs, alleging that the County Executive lacked the authority to terminate the commissioners, to veto any of the meeting minutes that authorized the stipend and benefits for the commissioners, or to veto the meeting minutes that authorized funding for an appeal, as well as the appeal itself, to the Local Finance Board. Defendants in this matter are Kathleen Donovan (the County Executive), Bergen County, and the Bergen County Board of Chosen Freeholders (collectively, defendants, except where noted).
As a result of motions and cross-motions filed, the trial court reinstated the commissioners, finding that the County Executive could not terminate them without first finding that the commissioners had committed misconduct or neglected their duties. In respect of the veto issues, the court found that compensation cannot be reduced while the commissioners are in office; therefore, the court concluded that the veto of the meeting minutes that authorized the stipend and benefits was invalid. Moreover, the court determined that the County Executive’s acts of vetoing the Authority’s administrative appeals and their funding were ultra vires. Finally, the court also noted that, if there was a conflict between the Charter Law and the MCUAL (applied as a general law in Bergen County under N.J.S.A. 40:41A-25), the MCUAL governs.[2]
*441 Defendants appealed. On August 1, 2012, while the appeal was pending and in light of the trial court’s finding that the incumbent commissioners were entitled to receive an annual stipend and health care benefits, the Bergen County Board of Freeholders passed a resolution terminating all stipends and benefits for commissioners appointed after April 18, 2012. That resolution is not challenged in the present action.
The Appellate Division affirmed in part and reversed in part.
First, the panel held that the County Executive “exceeded the bounds of the authority conferred upon her by statute when she terminated the commissioners” and thereby affirmed the trial court’s judgment on the termination issue. Noting that N.J.S.A. 40:41A-37(c) allows a County Executive “to remove an official in the unclassified service of the county — and there is no dispute that the authority’s commissioners are in the unclassified service,” the panel reasoned that the County Executive must have unilateral appointment power over the commissioners in order to exercise unilateral removal power. Because the County Executive did not have the power to appoint the Authority’s commissioners without the advice and consent of the board of freeholders, the panel determined that she did not have the power to remove the commissioners without the Board’s involvement. And, equally important, the panel pointed to N.J.S.A. 40:14B-16 as setting forth the bases for which a commissioner could be removed. Pursuant to that statute, a commissioner must be provided with a copy of the charges and must be provided an opportunity to be heard by the governing body, ibid., which, under the county executive form of government, the panel explained citing N.J.S.A. 40:41A-32(b), is comprised of the county executive and the board of freeholders. The County Executive’s actions were determined to be ultra vires for failing to follow that process.
Second, the panel held that the County Executive could veto the portion of the Authority’s meeting minutes that submitted a 2012 Authority budget that included provision for the commissioners’ stipend and health care benefits, thus reversing the trial court’s *442 judgment on those issues. According to the panel, the Legislature gave the County Executive, through N.J.S.A. 40:41A-37(h), the power to veto any action taken by a county utilities authority and placed no limit on the matters that could be vetoed. In response to the Authority’s argument that the 1979 freeholder resolution authorized an annual stipend of $5000 that would be awarded to succeeding commissioners indefinitely, the panel read the resolution as “authoriz[ing] the annual stipend of $5,000 to only those commissioners identified in the resolution, none of whom [were] still in office.” The panel also noted that the freeholders never passed a resolution authorizing health care benefits for the commissioners, as would be required by N.J.S.A. 40:14B-17 according to the panel.
In addressing the compensation and health benefits issue, the panel also relied on N.J.S.A. 40:41A-26. The panel reasoned that Charter Law counties like Bergen County are governed by the Charter Law’s provisions, see N.J.S.A. 40:41A-25, and also are subject to “general law,” see ibid., as that term is defined under N.J.S.A. 40:41A-26. The panel determined that general law such as the MCUAL applies when such law is not inconsistent with the Charter Law, and here the panel declared the Charter Law provisions paramount and controlling over MCUAL general law provisions regarding reduction of the commissioners’ compensation through the County Executive’s exercise of her veto power.
Finally, we note, for completeness, that the appellate panel stated that the Authority had a constitutional right to appeal the County Executive’s veto of Authority minutes to both the Director and the Local Finance Board within DCA and, consequently, to expend funds to finance an appeal. However, the panel identified that issue on appeal to be moot because the panel concluded that the County Executive could veto other portions of the Authority’s minutes that dealt with the payment of the commissioners’ annual stipends and benefits. The issue of the appropriateness of using veto authority in such manner — to block the Authority’s right to appeal vetoed action within DCA administrative channels — is not *443 before us as the parties axe not pursuing the issue before this Court.
The Authority filed a petition for certification with this Court and defendants filed a cross-petition. The Authority also filed an emergent motion for stay of relief pursuant to Rule 2:9-8. A temporary stay of the termination of the commissioners’ health care benefits was put in place on October 24, 2014. The full Court thereafter denied the Authority’s motion for a stay on November 18, 2014.
We granted the Authority’s petition as well as defendants’ cross-petition. 220 N.J. 573, 108 A.3d 633 (2015).
III.
In the petition and cross-petition for certification filed in this matter, the parties raise essentially the same issues but from different perspectives. Common to each, we are asked to resolve (1) whether the County Executive had the authority to order the removal of the commissioners and whether the manner of their removal comported with law; and (2) whether by use of her veto power the County Executive could eliminate the Authority’s provision of (a) the $5000 stipend paid to commissioners since 1979, and (b) the health benefits provided to the commissioners in more recent years. The parties present differing arguments in approaching those issues but, at bottom, those are the issues to be resolved. Their arguments track those presented and addressed by the trial court and Appellate Division, as discussed above.
rv.
A.
The dispute in this matter is one involving the proper interpretation of two statutory schemes that contain provisions touching on the controversies that erupted in Bergen County. The goal in cases of statutory construction is simple. It is the *444 court’s duty to seek and give effect to the Legislature’s intent. See Brooks v. Odom, 150 N.J. 395, 401, 696 A.2d 619 (1997).
When interpreting multiple statutes touching upon the same subject, the goal is the same but with this added component: We must attempt to harmonize the provisions of all statutes that the Legislature has enacted affecting the subjects involved. Town of Kearny v. Brandt, 214 N.J. 76, 98, 67 A.3d 601 (2013) (citing Saint Peter’s Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15, 878 A.2d 829 (2005)). Indeed, this Court has recognized that
[t]he Legislature is presumed to be familial- with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose. And the courts have the duty of reconciling them so as to give effect to both expressions of the laurmahers’ will.
[State v. Federanko, 26 N.J. 119, 129-30, 139 A.2d 30 (1958) (emphasis added) (citations omitted).]
To that end, “[statutes that deal with the same matter or subject should be read in pari materia and construed together as a ‘unitary and harmonious whole.’ ” Saint Peter’s Univ. Hosp., supra, 185 N.J. at 14-15, 878 A.2d 829 (quotation marks and citation omitted). That is our paramount concern in the present matter for we presume that the Legislature intended for its two statutory schemes — the Charter Law and the MCUAL — to generally work harmoniously, not in conflict with one another.
Intertwined in the parties’ arguments are countering positions over how to interpret N.J.S.A. 40:41A-26. Because Bergen County has a county executive form of government, under N.J.S.A. 40:41A-25, it is “governed by the plan adopted, by the provisions of this law applicable to all optional plans, and by all general laws.” The Charter Law defines “general law” as one that:
a. Is not inconsistent with this act; and
b. Is by its terms applicable to or available to all counties, or;
c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare.
[N.J.S.A. 40:41A-26.]
*445 Indeed, panels of the Appellate Division have wrestled with how subsection (a) applies with (b) and (c). See In re Salaries for Prob. Officers of Hudson Cty., 158 N.J.Super. 363, 367, 386 A.2d 403 (App.Div.), certif. denied, 78 N.J. 339, 395 A.2d 208 (1978); Amato v. Bd. of Chosen Freeholders of the Cty. of Essex, 240 N.J.Super. 313, 316-17, 573 A.2d 209 (App.Div.1990). This ease does not require us to resolve that open question because we fail to see direct inconsistency between the MCUAL and the Charter Law on the issues before us. Rather, we find that the statutes can, and should, be reconciled and applied in a harmonious manner that fulfills the legislative intent underlying each.
B.
We consider first the extensive authority of the County Executive over the administration of county government and the tools placed at her disposal to carry out that responsibility.
Generally described, the county executive is vested with the authority to “supervise, direct and control all county administrative departments.” N.J.S.A. 40:41A-37(a). As previously noted, as part of specifically enumerated powers, the county executive is authorized to appoint the heads of county departments and divisions and, among others, “the members of all county boards, commissions and authorities,” subject to the advice and consent of the board of freeholders. N.J.S.A. 40:41A-37(b); see N.J.S.A. 40:41A-41(a) (conferring advice and consent authority on board).
Also, pursuant to N.J.S.A. 40:41A-37(c), the county executive has general removal and suspension power over individuals in the unclassified service, “over whose office the county executive has power of appointment,” subject to the provisions of N.J.S.A. 40:41A-87(b); see also N.J.S.A. 40:41A-37(d) (authorizing county executive to retain or delegate appointment and removal power over departmental employees, subject to civil service or administrative code requirements specifying otherwise).
The removal power is not unilateral. Under N.J.S.A. 40:41A-87(b), a provision generally applicable to all optional forms of *446 county government, the board of freeholders has authority, after notice and upon action within a limited period of time, to short-circuit the proposed removal, or suspension for a definite term, of an employee by passing, by two-thirds vote, a resolution of disapproval, which voids the termination or suspension prior to a public hearing. Otherwise, the employee receives a public hearing, at the conclusion of which the board retains the ability to veto the county executive’s disciplinary action. Ibid. A notable exception is provided for the county administrator, who serves at the exclusive discretion of the county executive. See N.J.S.A. 40:41A-42 (granting board advice and consent over county administrator but withholding from board ability to prevent administrator’s suspension or dismissal by passage of resolution of disapproval); cf. N.J.S.A. 40:41A-41(d) (providing similarly that counsel to board serves at board’s pleasure). Thus, where the Legislature intended to confer on the county executive unilateral removal authority, it knew how to do so.
In addition to appointment power over members of county boards, commissions, and authorities, among other high-ranking county officials, and the described removal powers, the county executive also has other powers in connection with county functions that are pertinent in this appeal. The county executive is granted veto power, which can be used in respect of ordinances passed by the board of freeholders, N.J.S.A. 40:41A-37(g); cf. N.J.S.A. 40:41A-38(p) (allowing veto in limited setting to board resolutions of consent to municipal ordinances or resolutions regulating traffic or parking on county roads), and such veto power can be exercised in respect of all or a part of the minutes of a county authority, N.J.S.A. 40:41A-37(h). Regarding the latter, the county executive’s veto of a county authority’s minutes may be overridden by majority vote of the full membership of the board of freeholders within ten days of receipt of the veto action. Ibid.
On the other hand, the MCUAL speaks directly to the Authority’s commissioners’ right to hold office and protections during *447 their term of office — protections to which the commissioners are entitled before removal or reduction in compensation may occur.
Specifically, N.J.S.A. 40:14B-16 provides that
[e]ach member of a municipal authority shall hold office for the term for which he was appointed and until his successor has been appointed and has qualified. A member of a municipal authority may be removed only by the governing body by which he was appointed and only for inefficiency or neglect of duty or misconduct in office and after he shall have been given a copy of the charges against him and, not sooner than 10 days thereafter, had opportunity in person or by counsel to be heal'd thereon by such governing body.
The MCUAL also authorizes, as noted, the provision of compensation to commissioners, subject to any limitations established in the original resolution reorganizing a county sewerage authority as a municipal authority or as subsequently amended by like resolution, and provides that compensation may not be reduced during a member’s term of office except with consent. See N.J.S.A. 40:14B-17.
With that statutory background, we turn to the interpretative task at hand, beginning with review of the County Executive’s action ordering the removal of the seven commissioners.
V.
Our examination of the County Executive’s authority under the Charter Law and the MCUAL provisions addressing utilities authority commissioners’ terms of office and the manner of removal of such office-holding commissioners does not reveal a conflict between the two statutory schemes. There certainly is not an irreconcilable conflict that prevents this Court from fulfilling its duty to seek to harmonize these two statutory schemes. See Saint Peter’s Univ. Hosp., supra, 185 N.J. at 14-15, 878 A.2d 829.
N.J.S.A. 40:14B-16 establishes that the commissioners hold their office for the length of their term. However, the MCUAL recognizes limited, for-cause circumstances for which a member of a utilities authority may be ousted from office. The Legislature clearly recognized circumstances calling for removal of a commissioner short of the completion of one’s term and the appointment *448 of a successor, and it established a safety valve by providing a mechanism to accomplish that eventuality. A utilities authority commissioner “may be removed ... by the governing body by which he was appointed ... for inefficiency or neglect of duty or misconduct in office.” Ibid. Importantly, the MCUAL sets out notice and hearing processes to be followed to accomplish such a removal, providing expressly that a commissioner may be removed only after he has been “given a copy of the charges against him” and after he has been given an opportunity to respond. Ibid. That statutory language recognizes a protected right conferred on the appointed office holder to retain the office for a specific term, see ibid, (creating right to hold office), and it is consonant with well-established law governing due process rights attaching to such property interests, cf. Nicoletta v. N. Jersey Dist. Water Supply Comm’n, 77 N.J. 145, 150-51, 390 A.2d 90 (1978); see also Siss v. Cty. of Passaic, 75 F.Supp. 2d 325, 341 (D.N.J.1999) (“Under New Jersey law, public employees may be discharged with or without cause, unless their positions are otherwise protected, for example, by ... a fixed term.”), aff'd, 234 F.3d 1265 (3d Cir.2000).
That protection guaranteed to commissioners under the MCU-AL does not conflict with the scheme for removal of persons under the Charter Law. The Charter Law speaks clearly on the power of appointment to county authorities under the county executive plan of government: “With the advice and consent of the board, [the Executive] shall appoint ... the members of all county boards, commissions and authorities.” N.J.S.A. 40:41A-37(b). By that language, the County Executive is the appointing authority for the members of the utilities authority, but her power to remove is not unilateral.[3] The analysis must return to the statutorily designated *449 roles for both the county executive and the board under the county executive plan set forth in the Charter Law.
When it comes to removal of even “unclassified persons”[4] in county service, there is a legislative role to be played by the board in the checks and balances created under the county executive form of government. The Charter Law allows the county executive to initiate removal of unclassified employees, but that authority cannot be exercised without affording such persons notice of the contemplated action and a public hearing if desired. And the Charter Law provides an important role for the board to play at the outset of such disciplinary action, by authorizing the board to issue a resolution to stop the processing of charges against an unclassified employee, and to reject the termination or suspension for a definite period after a public hearing is concluded. That cheeking process under the Charter Law prevents the county executive from taking unilateral action and establishes a hearing process for unclassified individuals, who enjoy the statutory procedural protections of prior notice of the proposed action and a public hearing opportunity to answer the proposed action and protect reputational interests. Ultimately, the board can decline to impose discipline initiated by the county executive.
Here we have office holders, protected from removal except for certain cause bases, entitled to serve out their terms and to continue in office until their successor is appointed. The for-cause protection from removal of N.J.S.A. 40:14B-16 is not stripped from them by virtue of the authority conferred on a county *450 executive under N.J.S.A. 40:41A-37(c) for lesser-protected employees. Such an interpretation of N.J.S.A. 40:41A-37(c) would expand the authority conferred on the county executive by the Legislature, an action that we are not empowered to take.
More importantly, the County Executive here did not follow the very procedure that the Charter Law requires, if it were to be the sole statute to be complied with under these circumstances, and it is not. The County Executive did not provide to the commissioners notice of the proposed action or opportunity for a public hearing, as N.J.S.A. 40:41A-37(c) requires. She sought to immediately and unilaterally terminate them. That she could not do. Compare N.J.S.A. 40:41A-87(b) (granting board role in termination and providing officer or employee with notice right and opportunity for public hearing), with N.J.S.A. 40:41A-42 (granting county executive unilateral authority to terminate county administrator); see also Hudson Cty. Bd. of Chosen Freeholders v. Clark, 203 N.J.Super. 102, 106-07, 495 A.2d 1353 (App.Div.) (recognizing same), certif. denied, 102 N.J. 340, 508 A.2d 215 (1985). In sum, the County Executive’s action ordering the immediate termination of the seven Authority commissioners was not conducted in accordance with her authority under N.J.S.A. 40:41A-37(c), and her unilateral action was contrary to and in violation of N.J.S.A. 40:14B-16, with which she had to comply.
Finally, we note another reason for finding no conflict between the Charter Law and the MCUAL with respect to removal of commissioners. There are several provisions under the Charter Law that reference the MCUAL. The Charter Law specifically gave counties operating under the optional forms of government the ability to reorganize, alter, or abolish county agencies, so long as required services continued to be provided. But the statute carved out an exception for governmental entities established under the MCUAL:
All county offices, boards, commissions and authorities authorized or established by statute, other than an authority organized, under the “municipal and county utilities authorities law,” P.L.1957, c.183 (C.40:14B-1 et seq.), those boards and offices which are subject to the provisions of subsection b. of section 125 of *451 P.L.1972, c.164 (C.40:41A-125), and other than educational institutions authorized or established pursuant to Title 18A of the New Jersey Statutes, shall be considered to be county agencies for the pin-poses of this section.
[N.J.S.A. 40:41A-30 (emphasis added).]
The Sponsor’s Statement to the 1997 amendment that added the language exempting utilities authorities provided as follows:
This bill would prohibit the board of freeholders of a county organized under the “Optional County Charter Law,” P.L.1972, c. 154 (C. 40:41A-1 et seq.), from purging the members of a county utilities authority through its power to “reorganize” an authority pursuant to section 30 of P.L.1972, e. 154 (C. 40:41A-30). The “municipal and county utilities authorities law,” P.L.1957, c. 183 (C. 40:14B-1 et seq.), contains sufficient procedures for dissolving an authority or removing authority members for inefficiency, neglect of duty or misconduct in office that a freeholder board should not need to resort to a vague “reorganization” power that has a great potential for political abuse.
[Sponsor's Statement to S. No. 1891 (1997).]
We find that statutory section and history supportive of our conclusion.
Accordingly, we affirm the judgment of the Appellate Division, and that of the trial court, that declared the County Executive’s termination of the seven commissioners to be ultra vires and void.
VI.
With respect to the Authority’s challenge to the County Executive’s exercise of her veto power over the Authority’s minutes approving the inclusion of the $5000 stipend paid as compensation to Authority commissioners, as well as inclusion of funds for the provision of health benefits to the commissioners, we take each issue in turn.
A.
Having determined that commissioners have protected rights under the MCUAL that must be respected if harmonization is possible between that Act and the Charter Law, we turn to the stipend question. N.J.S.A. 40:14B-17 provides utilities commissioners absolute protection from reduction in compensation, unless they consent to a reduction, during the term of their office. *452 Under N.J.S.A. 40:14B-17, the compensation to be paid to commissioners was placed in the hands of the governing body when the Authority was reorganized. The board of freeholders held the power to set compensation in the reorganizing resolution that created the modern Authority existing in Bergen County and to make the compensation subject to annual or other limitations established in that original 1979 resolution.
Although the county executive has broad authority to exercise her veto power over Authority minutes on a wide range of substantive topics, see N.J.S.A. 40:41A-37(h), that power must be harmonized with other more specific protective legislation, such as N.J.S.A. 40:14B-17. Hence, our analysis depends on an interpretation of the 1979 resolution when the board of freeholders exercised the authority granted to it under N.J.S.A. 40:14B-17.
The resolution is not a model of clarity for it is brief in structure yet encompasses the accomplishment of many tasks called for in an original reorganizing resolution. As noted previously, the resolution authorized the reorganization, see N.J.S.A. 40:14B-4(a), established the required staggered terms for reappointed members of the previous sewer authority, who were named newly appointed members of the seven-member utilities authority, see N.J.S.A. 40:14B-4(a), (b)(1), and -6(b), and established a $5000 annual stipend for the first-appointed named commissioners of the new reorganized Authority.
The County Executive argues, and the Appellate Division determined, that the language in the 1979 resolution merely authorized $5000 stipends for the named persons in the resolution. That is one possible reading. However, it does not take into account that the resolution had to name individually the reappointed commissioners from the predecessor sewer authority and that the resolution had to identify the specific staggering of terms for the reappointed commissioners to the newly created entity under the directions provided by statute. In that context, the board had the opportunity to provide for compensation to be paid to the commissioners and it did so, referencing an annual $5000 stipend. It did *453 not add any specific limitation that gives the direction that the County Executive, and the Appellate Division, read into the language.
The language is ambiguous. Yet, we have the benefit of decades of practice that treated the $5000 stipend as the compensation that came with appointment to the position of commissioner. It is unreasonable to ignore that past practice. It is unreasonable to ignore that the Board held in its hands the opportunity to alter the compensation practice being uniformly followed by passing a subsequent resolution. See N.J.S.A. 40:14B-17. It did not do so until after this dispute between the County Executive and the Authority arose. In light of the totality of circumstances, we are loath to interpret the ambiguous wording of the 1979 resolution as not having set an annual compensation (the $5000 stipend) that would be paid to commissioners upon appointment to a term on the Authority. We so hold and therefore reverse the judgment of the Appellate Division. The County Executive’s use of the veto power to diminish the compensation being paid to the Authority commissioners violated N.J.S.A. 40:14B-17 and must be declared void.
B.
We do not reach the same conclusion in respect of health benefits to the commissioners. Applying the same analysis as used in respect of the stipend, we find affirmance of the County Executive’s use of her veto power to be straightforward.
It is apparent from the record that the Board of Freeholders never authorized by resolution the provision of health benefits to Authority commissioners as part of any compensation permitted under N.J.S.A. 40:14B-17. To the extent that the Authority commissioners took it upon themselves to authorize those benefits for themselves and to include provision for the cost of those benefits within the overall budgetary line that encompassed benefits provided to Authority employees, that action was subject to review by the County Executive during her scrutiny of the min *454 utes of the Authority’s meeting that approved such budget action. Her supervisory authority to review and reject Authority action through her veto power under N.J.S.A. 40:41A-37(h) is broad and easily encompasses authority to disapprove such administrative action affecting the cost of services by the Authority. The County Executive’s determination to veto that portion of the minutes, and thereby to prevent the provision of health benefits to the commissioners, was well within her prerogative.
We therefore affirm the judgment of the Appellate Division that affirmed that use of the County Executive’s veto authority.
VII.
The judgment of the Appellate Division is affirmed in part and reversed in part.
Chief Justice RABNER, Justices ALBIN and FERNANDEZ-VTNA, and Judge CUFF (temporarily assigned) join in Justice LaVECCHIA’s opinion. Justice PATTERSON and Justice SOLÓMON each filed separate opinions, concurring in part and dissenting in part.

 Bergen County records show that, after the Authority was reorganized, its seven-person membership increased to nine members in 1981 and thereafter fluctuated but generally stayed at a nine-member level, including at the time of the actions in this matter.

 While the matter was pending before the trial court, the Local Finance Board reversed the Director of the Division of Local Government Services, finding that they did not have jurisdiction over the matter once the prerogative writs complaint was filed. That ruling was not appealed. Therefore, we do not address it.

 In this respect, we disapprove of the Appellate Division's statement that whenever advice and consent is required for appointment to a position, the body in which such advice and consent is reposed also must be involved in the removal of the appointed person from office. Our analysis relies on a statutory role provided to the board in reaching our result on the proper procedures to be followed to ensure a valid removal. We do not endorse the panel's contrary analysis.

 Persons referenced to be "in the unclassified service " are persons who do not enjoy the protections of those in the classified status. Compare N.J.S.A. 11A:3-2 (career service), with N.J.S.A. 11A:3-4 (State unclassified service), and N.J.S.A. 11A:3-5 (political subdivision unclassified service). Career service employees are granted the right to a hearing and other procedural and substantive protections prior to imposition of certain discipline and removal. See N.J.S.A. 11A:2-6, -13. Persons in unclassified service do not enjoy corresponding civil service protections. The Charter Law acknowledges the county’s obligation to adhere to civil service requirements in respect of removal, where applicable. See N.J.S.A. 40:41A-37(d).